NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180651-U

NO. 4-18-0651

FILED
March 3, 2020
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| YARII A. MASSEY, | ) | No. 07CF561 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott D. Drazewski, |
| | | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:   (1) Defendant's 92-year sentence for nonhomicide offenses committed when
defendant was 16 years old is a *de facto* life sentence in violation of the eighth
amendment's prohibition against cruel and unusual punishment.

(2) Postconviction counsel did not fail to comply with Illinois Supreme Court
Rule 651(c) (eff. Feb. 6, 2013).

¶ 2           In September 2018, the circuit court granted the State's motion to dismiss the

amended postconviction petition filed by defendant, Yarii A. Massey (born November 12, 1990).

Defendant appeals, arguing (1) his 92-year prison sentence, imposed for nonhomicide offenses

committed when defendant was 16 years old, is an unconstitutional *de facto* life sentence; and

(2) postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c) (eff. Feb. 6,

2013) and provide reasonable assistance by amending defendant's *pro se* claims in such a

manner as to make defendant's postconviction claims conclusory and subject to misinterpretation by the circuit court. We agree with defendant's first argument and remand for resentencing.

¶ 3                                I. BACKGROUND

¶ 4        In June 2007, defendant was charged with six counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(1), (a)(2) (West 2006)) and three counts of residential burglary (720 ILCS 5/19-3(a) (West 2006)). All counts of aggravated criminal sexual assault involved one victim, A.W. The residential burglary counts involved three victims in three separate residences, A.W., Vinay Pulletikurti, and Katie Stringwell.

¶ 5        One year later, defendant's jury trial was held. The facts of the trial were summarized in greater detail in the order affirming defendant's conviction and sentence. See *People v. Massey*, No. 4-08-0915 (2010) (unpublished order under Illinois Supreme Court Rule 23). A.W. testified she returned to her apartment on May 25, 2007, at approximately 11 p.m. Near 3 a.m., A.W. saw her bedroom door open. An African-American male, identified as defendant, turned on the light and then turned it off. Defendant sexually assaulted A.W. Defendant dragged A.W. to another room. When A.W. tried to escape, defendant tackled her. He grabbed a knife from a kitchen drawer and forced another act of sexual penetration. At some point, defendant threw the knife.

¶ 6        Pulletikurti and Kayla Larson testified regarding items taken from their residences in the early morning of May 26, 2007. Larson testified she heard someone attempting to enter her room at approximately 2 a.m.

¶ 7        Normal police officer Michael Baird testified he was dispatched to A.W.'s residence at 5:40 a.m. on May 26, 2007. When he found A.W., she was sobbing

"uncontrollably." Officer Baird observed a "red mark" on A.W.'s face and a small bite mark on her hand.

¶ 8       A witness who lived across from White Oak Park testified she awoke at approximately 5 a.m. and saw a car stuck on the sidewalk area. That witness saw one African-American male and no other passenger. The male exited the vehicle, taking some bags, and ran toward the lake.

¶ 9       Chenoa police officer Travis Cornwall testified he was dispatched to White Oak Park, where he found individuals standing near a maroon vehicle. The individuals pointed toward the male who exited the vehicle, later identified as defendant. Defendant was walking away from the officer and carrying a blue duffel bag. Defendant threw an orange purse into the water. When Officer Cornwall told defendant to stop, he complied. Officer Cornwall, upon searching defendant, found electrical cords, cell phones, a pink iPod, a brown wallet, a compact disc, and money. Inside the duffel bag were two laptops and electrical cords. These included items taken from the victims' residences. Defendant told Officer Cornwall a young white female had been driving the vehicle. Defendant said he had asked the female, whom he did not know, for a ride home. The female crashed the car. Both exited. The female told defendant to take the blue duffel bag. Defendant did.

¶ 10       Medical personnel testified regarding A.W.'s injuries. A.W. had a palm print and thumb indentations on her back, bruises on her arm and in her mouth, and abrasions on her knuckle, knee, and face. A.W. suffered a vaginal tear and had blood in the vaginal vault. A.W.'s internal bleeding was not normal for a female not having her menstrual period. An emergency-room physician opined A.W. was sexually assaulted.

¶ 11　　　　Forensic scientists testified defendant's deoxyribonucleic acid (DNA) was found on a vaginal swab of A.W. Anal swabs revealed blood and semen. A crime-scene technician testified she collected evidence from A.W.'s residence. A knife, measuring 13.5 inches, was found at the bottom of the stairs.

¶ 12　　　　Defendant testified on his own behalf. He went to a party on May 25, 2007, and left around 12:30 a.m. the following day. Defendant walked down the street where he saw A.W. Defendant asked A.W. for a ride and she agreed. They ended up at A.W.'s residence, where they had consensual intercourse. When the condom broke, A.W. was frustrated. She left the room. When she returned, she saw defendant's high school identification. The two left the house. A.W. drove and lost control of the car near White Oak Park. Defendant decided he would walk. A.W. asked him to take the duffel bag. He did and was eventually stopped by the police. Defendant denied having anal sex with A.W. and forcing oral sex. Defendant denied breaking into any of the residences.

¶ 13　　　　The jury found defendant guilty of all charged offenses. In August 2008, the trial court sentenced defendant to an aggregate prison term of 92 years.

¶ 14　　　　Defendant pursued a direct appeal, challenging the admission of statements made by defendant's mother and arguing the mandatory 10-year sentence enhancements for using a knife during the sexual assaults violated the proportionate-penalties clause of the Illinois constitution. We affirmed. *Massey*, slip order at 13.

¶ 15　　　　In June 2011, defendant filed a *pro se* petition for postconviction relief. In his petition, he asserted multiple claims, two of which are pertinent to this appeal. The first claim asserted by defendant was the trial court's admonishments to the jury pursuant to Illinois

Supreme Court Rule 431(b) (eff. May 1, 2007) were erroneous, as the court said jurors "must be willing to accept and *follow* these basic principles of law." (Emphasis in original.)

¶ 16 The second *pro se* claim of error pertinent to this appeal is the alleged failure of defendant's trial counsel to seek forensic testing on the knife alleged to have been used by defendant. In part, defendant asserted the knife should have been tested for the presence of blood or DNA: "Defense [c]ounsel also knew that [defendant] claimed he was innocent and should have had the knife tested. If [d]efense [c]ounsel would have had the knife tested and there was no blood or any type of DNA from the alleged victim, it would have helped and supported the defense."

¶ 17 In September 2011, the circuit court advanced defendant's *pro se* petition to second-stage proceedings under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)). In April 2012, appointed counsel, Keith Davis, filed a motion to withdraw as defendant's postconviction counsel, a motion for a finding of no merit, and a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984). Davis asserted the postconviction petition lacked merit and must fail.

¶ 18 At a June 2012 hearing on Davis's motions, defendant explained he sent Davis a letter asking him to obtain an affidavit from Demetrius Moore. Defendant asserted Moore would testify he saw defendant and A.W. on the night of May 26, 2007. Defendant maintained he informed Davis about Moore during their first meeting, but counsel neither obtained an affidavit from Moore nor called him to testify. Davis acknowledged he received a November 2011 letter from defendant, in which defendant alleged trial counsel provided ineffective assistance for not calling Moore to testify.

¶ 19        Upon learning of the information regarding Moore, the circuit court declined to rule on Davis's motions and directed Davis to follow up to determine whether there was a sufficient factual basis upon which to file an amended petition for postconviction relief.

¶ 20        At a September 2012 status hearing, the circuit court noted Davis filed a "memorandum to the court regarding 'Demetrius Moore' and 'Andre Woods.' " In the memorandum, Davis asserted an affidavit from Woods may support defendant's claim he was not in possession of the goods taken from the burglaries and A.W. did not appear upset or harmed the night of the alleged assaults. Davis stated he was unable to locate Moore and, therefore, defendant's allegations as to Moore were hearsay and unproveable.

¶ 21        The circuit court was informed by defendant, however, Moore was present at the hearing. Moore provided the court a handwritten statement he saw defendant "sit in the car with a Caucasian lady." Defendant told the court he wanted to file a supplement to his *pro se* postconviction petition. Because defendant was represented by counsel, the court directed defendant to give Davis the information for review.

¶ 22        At a November 2012 status hearing, Davis asked the circuit court to set his motions for hearing. Defendant informed the court in the event the court denied his motion for no merit, he would be ready to proceed on the postconviction petition.

¶ 23        On January 30, 2013, the circuit court held a hearing on defendant's petition for postconviction relief and Davis's motions to withdraw. Davis informed the court it should consider the motions to withdraw, but if the court denied the motions, Davis had subpoenaed witnesses and was ready to proceed on defendant's petition. Demetrius Moore and Andre Woods were present at the hearing. The court concluded defendant's *pro se* postconviction should be

amended to incorporate the arguments trial counsel was ineffective for not investigating witnesses, Woods and Moore, and appellate counsel was ineffective for not raising the issue before the trial court. The court concluded it would grant defense counsel leave to file an amended pleading to conform to the proofs.

¶ 24    The circuit court then heard evidence on the issue. Moore testified he and defendant were close friends. They had known each other since high school. On May 26, 2007, Moore saw defendant "get in a car with a Caucasian lady." The female was waiting on him. She did not seem "upset, nervous, afraid, excited, [or] angry." Defendant told Moore he was leaving. Moore did not see anything in defendant's possession. When asked where this occurred, Moore said he believed in Normal, but he did not recall the exact address. Moore stated he did not remind defendant about his memory of this encounter before trial.

¶ 25    On cross-examination, Moore stated he and defendant had known each other approximately 10 years. Moore could not recall the type of vehicle defendant entered. He did not recall the color. Moore could not describe the woman, as he "didn't really get a good look at her." When asked if he knew what street the encounter occurred on or what he was near at the time, Moore stated it "was like close to campus." At the time he saw defendant and the female, he was on bikes with "Gigi" and it was "going on nighttime." Moore did not know Gigi's name.

¶ 26    The circuit court also heard testimony from Andre Woods. Woods testified he knew defendant "[b]y just from a brief, long time ago, I met—I didn't meet him[;] I saw him before." Woods stated he was at a party on School Street in Normal, Illinois. He saw defendant approach a car and get into that "car with some girl." Earlier at the party, Woods had talked to the same female, "trying to hook up with her." Woods did not see defendant at the party. Woods

- 7 -

did not remember the date but testified the incident occurred in late May 2007. The female did not appear to be upset. Woods did not see defendant in possession of personal property, such as a computer or gift bag.

¶ 27　　　　Woods testified he and defendant met while they were in the penitentiary. Woods asked defendant "what I [knew] him from." Defendant said he remembered Woods was sitting out in front of the School Street party. Woods was offering his testimony because "[t]hat's the right thing to do[.]"

¶ 28　　　　On cross-examination, Woods stated he went to the party with "Levi" and "Thomas;" he did not know their last names. Woods did not know whose house the party was in. The house was across the street from a sorority. The female was wearing dark shorts and a shirt that had "like a sailboat" on it. She was Caucasian. He believed her hair color was dark. Her hair was long, but he did not know if it was in a ponytail or down. Woods did not talk to defendant that night. Woods saw defendant when Woods was outside smoking. Woods did not remember the type of car the woman drove but believed it was red or maroon. On examination by the circuit court, Woods confirmed he had not seen defendant for almost five years after the party.

¶ 29　　　　Defendant testified A.W. was the white female Moore and Woods saw with defendant. The circuit court granted Davis leave to file an amended postconviction petition.

¶ 30　　　　In March 2013, Davis filed an amended petition for postconviction relief. In this petition, he abandoned defendant's *pro se* claims and asserted the claim defendant "was substantially deprived of his constitutional rights to a fair trial in that he was unable to present to the jury newly-discovered evidence from Demetrious Moore and Andre Woods *** and had he been able to so present that evidence" he would have been acquitted.

¶ 31    At a May 2013 status hearing, the State announced it would not file a motion to dismiss the amended postconviction petition. Davis stated he would not present further evidence on the matter. At a July 2013 hearing on defendant's amended postconviction petition, the court found the testimony of Moore and Woods "wholly unbelievable" and denied the amended postconviction petition.

¶ 32    Defendant appealed the denial, arguing the following: (1) postconviction counsel suffered from an actual conflict of interest; (2) postconviction counsel did not comply with Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984); (3) his sentence was unconstitutional; and (4) the automatic transfer provision of the Juvenile Court Act of 1987 (705 ILCS 405/5-130 (West 2006)) was unconstitutional. See *People v. Massey*, 2015 IL App (4th) 130651-U, ¶ 21. We found Davis failed to comply with Rule 651(c) by abandoning defendant's claims. Due to the unique procedural posture of the case, meaning the claims abandoned by counsel, the bases of defendant's Rule 651(c) arguments were not considered by the circuit court. See *id.* ¶ 28. We remanded for appointment of new counsel and second-stage proceedings. *Id.* ¶ 41.

¶ 33    On remand, private counsel, Steven J. Weinberg, entered his appearance. In December 2016, postconviction counsel filed an amended petition for postconviction relief, asserting over 20 claims. Four issues in the amended petition are relevant to this appeal: (1) trial counsel failed to object to improper *voir dire* procedures; (2) trial counsel failed to investigate and call exculpatory witnesses, Moore and Woods; (3) trial counsel failed to seek forensic testing of the knife; and (4) defendant, who was 16 years old when the alleged crimes occurred, was entitled to a new sentencing hearing under *Graham v. Florida*, 560 U.S. 48, 82 (2010). The State filed a motion to dismiss the amended petition for postconviction relief.

¶ 34    At a hearing in August 2018, the circuit court granted the State's motion to dismiss defendant's amended petition for postconviction relief. This appeal followed.

¶ 35                              II. ANALYSIS

¶ 36                          A. Standard of Review

¶ 37    We review *de novo* the dismissal of a postconviction petition that did not follow an evidentiary hearing. *People v. Cotto*, 2016 IL 119006, ¶ 24, 51 N.E.3d 802.

¶ 38                          B. Defendant's Sentence

¶ 39    Defendant first argues his sentence is unconstitutional under *Graham* and *People v. Buffer*, 2019 IL 122327, 137 N.E.3d 763. Defendant maintains the two cases, when read together, establish defendant's 92-year sentence for nonhomicide offenses is unconstitutional. The State concedes the error and maintains defendant should be resentenced under *Buffer*.

¶ 40    In *Graham*, the defendant, age 17, committed armed robbery, for which he received a sentence of life without parole. *Graham*, 560 U.S. at 55-57. The *Graham* court referred to a sentence of life without parole as "the second most severe penalty permitted by law." *Id.* at 69 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy J., concurring)). The sentence "alters the offender's life by a forfeiture that is irrevocable," depriving the offender "of the most basic liberties without giving hope of restoration[.]" *Id.* at 69-70. The Court found a life sentence especially harsh for juveniles, as they would serve more years and a larger percentage of their lives than an adult offender. *Id.* at 70. Finding the penological justifications for a sentence of life without parole—retribution, deterrence, incapacitation, and rehabilitation—did not support imposing such a severe penalty for juveniles (see *id.* at 71-74), the *Graham* Court determined states must provide juvenile defendants "some

- 10 -

meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 75. According to the Court, the eighth amendment "prohibit[s] States from making the judgment at the outset that [juvenile offenders of nonhomicide crimes] never will be fit to reenter society." *Id.*

¶ 41 Recently, in *Buffer*, the Supreme Court of Illinois determined a sentence of 40 years or more for a juvenile offender is, for the purposes of the eighth amendment's prohibition against cruel and unusual punishment, a sentence of "*de facto* life without parole." *Buffer*, 2019 IL 122327, ¶ 40. The *Buffer* defendant, unlike the *Graham* defendant, had been convicted of a homicide offense. See *id.* ¶ 5.

¶ 42 The State concedes *Buffer*'s holding applies in these circumstances. We accept the State's concession and find defendant's 92-year sentence for offenses he committed when he was 16 years old is prohibited by the eighth amendment. Defendant is entitled to resentencing.

¶ 43 While defendant agrees with the State's concession in part, he urges this court to not accept the State's recommendation to remand for resentencing under *Buffer*. Defendant contends he should instead be resentenced under *Graham*. Defendant argues *Buffer*, which relies upon *Miller v. Alabama*, 567 U.S. 460 (2012), permits life sentences for homicide juvenile offenders in certain circumstances (see *People v. Holman*, 2017 IL 120655, ¶ 46, 91 N.E.3d 849 (citing *Miller*, 567 U.S. at 477-78)), whereas *Graham* prohibits life-without-parole sentences for nonhomicide juvenile offenders while specifying no exceptions. Defendant further urges this court to find the relief in *Buffer* may not allow the circuit court discretion to avoid a life term.

¶ 44 We decline defendant's invitation to advise the circuit court. We have determined, pursuant to *Graham*, defendant's *de facto* life sentence violates the eighth amendment's

prohibition against cruel and unusual punishment. We remand for the circuit court to impose a sentence that complies with the eighth amendment.

¶ 45                                    C. Assistance of Postconviction Counsel

¶ 46         Defendant next argues postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) and to provide reasonable assistance when he amended the *pro se* postconviction petition in a way that rendered his claims powerless. Defendant asserts postconviction counsel worsened his *pro se* claims by deleting factual allegations and not including supporting documentation. Defendant identifies three specific *pro se* claims negatively affected by postconviction counsel's amendments: (1) he was denied due process when the trial court improperly admonished the jury pursuant to Rule 431(b) by asking the jury if they could "accept and follow" the *Zehr* principles; (2) trial counsel provided ineffective assistance by not seeking blood or DNA testing of the knife; and (3) trial counsel provided ineffective assistance by failing to investigate Demetrius Moore. In his reply brief, defendant further contends the State, while arguing postconviction counsel complied with Rule 651(c), did not dispute his contentions postconviction counsel failed to provide reasonable assistance. Defendant concludes because a Rule 651(c) claim and a lack-of-reasonable-assistance claim are two separate claims, the State forfeited any claim postconviction counsel's assistance was reasonable and he, therefore, is entitled to remand for further second-stage proceedings under the Act.

¶ 47         The Act sets for a method for those subject to criminal sentences to obtain relief from convictions resulting from a substantial denial of a constitutional right. 725 ILCS 5/122-1 *et seq.* (West 2010). Under this method exists a three-stage process for adjudicating petitions.

- 12 -

*Cotto*, 2016 IL 119006, ¶ 26. At the first stage, the circuit court considers the petition to determine whether it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2010). Petitions that survive first-stage review advance to the second stage. *People v. Hommerson*, 2014 IL 115638, ¶ 7, 4 N.E.3d 58. At the second stage, for an indigent defendant, the court may appoint counsel, who may amend the petition as needed. 725 ILCS 5/122-4 (West 2010). If counsel is appointed at this stage, appointed counsel must comply with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). Rule 651(c) provides the following, in part:

> "The record filed in that court shall contain a showing, which may
>
> be made by the certificate of petitioner's attorney, that the attorney
>
> has consulted with petitioner by phone, mail, electronic means or
>
> in person to ascertain his or her contentions of deprivation of
>
> constitutional rights, has examined the record of the proceedings at
>
> the trial, and has made any amendments to the petitions filed
>
> *pro se* that are necessary for an adequate presentation of
>
> petitioner's contentions." *Id.*

Proceedings surviving the second stage advance to the third stage, where a hearing is held, and defendant may present evidence supporting his petition. *People v. Pendleton*, 223 Ill. 2d 458, 472-73, 861 N.E.2d 999, 1007 (2006). At the second and third stages, "the defendant bears the burden of making a substantial showing of a constitutional violation." *Id.* at 473.

¶ 48 Petitioners under the Act are not entitled to the constitutional right to assistance of counsel. *Cotto*, 2016 IL 119006, ¶ 29. The Act guarantees petitioners only a reasonable level of assistance. *Id.* ¶ 30.

¶ 49        We begin with defendant's assertion the State has forfeited the argument postconviction counsel's representation was reasonable. The first premise of defendant's forfeiture argument is that Rule 651(c) and a lack-of-reasonable-assistance claim are two separate grounds upon which he can obtain relief. In other words, defendant contends he is entitled to remand if he can show (1) postconviction counsel failed to comply with Rule 651(c) *or* (2) he was denied the reasonable assistance of counsel. In support of this contention, defendant relies solely on *Cotto*.

¶ 50        *Cotto*, however, does not support defendant's premise. *Cotto* addresses the question of whether a petitioner who did not file a *pro se* postconviction petition and who is represented by privately retained postconviction counsel is entitled to reasonable assistance from counsel in the second-stage of postconviction proceedings. *Id.* ¶¶ 8, 25. The *Cotto* court observed Rule 651(c) did not apply in its case as the rule "applies only to a postconviction petition initially filed by a *pro se* defendant." *Id.* ¶ 41. The court found, however, it had "never conditioned the reasonable[-]level[-]of[-]assistance standard on the applicability of that rule" and determined the reasonable-level-of-assistance standard applied to all postconviction defendants. *Id.* In making this determination, the court found "Rule 651(c) is merely a vehicle for ensuring a reasonable level of assistance." (Internal quotation marks omitted.) *Id.*

¶ 51        *Cotto* does not stand for the proposition postconviction counsel, hired or appointed to amend a *pro se* petition, may comply with Rule 651(c) and yet still provide unreasonable assistance. In fact, *Cotto*'s own language supports the opposite conclusion as it holds "Rule 651(c) is merely a vehicle for ensuring a reasonable level of assistance." (Internal quotation marks omitted.) *Id.* It follows compliance with Rule 651(c) ensures a reasonable level

- 14 -

of assistance. There has been no forfeiture.

¶ 52        We turn to the question of whether postconviction counsel complied with Rule 651(c) when counsel amended defendant's *pro se* allegations.

¶ 53                              *1. Jury Admonitions*

¶ 54        In his *pro se* petition, defendant asserted the following regarding the trial court's pretrial admonitions to the jury:

> "The Petitioner maintains that the trial court's wording/reading of Supreme Court Rule 431(b)[ ] was an error and violated his due process and fair[-]trial rights. The trial court stated to the jurors that they must be willing to accept and *follow* these basic principles of law. *** The Illinois Supreme Court has held that each juror in a criminal case must understand and accept Rule 431(b). The wording the trial court used, "follow[,]" was an error. The court changed the meaning of the [supreme-court rule]. *** The erroneous reading of the rule[,] which included the word "follow[,]" changed the meaning and spirit of the rule, and the error had the effective [*sic*] as if the rule was never read. There was no way for it to be determined if the jurors were prejudice[d] against these principles because they were not correctly explained to them." (Emphasis in original).

¶ 55        Postconviction counsel wrote the following in the amended postconviction petition, omitting the word "follow" from the *pro se* petition:

- 15 -

"E. Failure to raise the ineffectiveness of trial counsel for failing to object to the improper admonishment of prospective jurors during *voir dire*.

75. Appellate counsel provided ineffective assistance of counsel in failing to argue that trial counsel provided ineffective assistance of counsel in failing to object to the trial court's improper admonishment of prospective jurors during *voir dire* in accordance with Illinois Supreme Court Rule 431(b) and by failing to argue that trial counsel was ineffective when it failed to object to the manner that the trial judge questioned prospective jurors regarding whether they understood and accepted the basic principles of law set out in *Zehr*."

¶ 56    Defendant argues postconviction counsel, by removing the word "follow," from the *pro se* allegations rendered the argument conclusory and subject to the circuit court's misinterpretation of the claim as one of trial-court error in addressing the jury as a group. Defendant, relying on *People v. Dixon*, 2018 IL App (3d) 150630, ¶¶ 17-20, 100 N.E.3d 193, contends the changes were so conclusory he was denied reasonable assistance of counsel.

¶ 57    At the time of defendant's trial, Rule 431(b) required the following:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be

- 16 -

convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

Before trial, the trial court asked the jurors if they could "accept and follow" the Rule 431(b) principles.

¶ 58    *Dixon* is factually distinguishable and does not support remand here. In *Dixon*, postconviction counsel in amending the *pro se* petition: (1) failed to allege or address the elements of the raised claims (*Dixon*, 2018 IL App (3d) 150630, ¶ 16); (2) provided "virtually no specific, factual allegations," (*id.* ¶ 17); and (3) failed to identify what "pretrial motions" counsel failed to file (*id.* ¶ 18).

¶ 59    Here, in contrast, postconviction counsel identified the supreme court rule the trial court allegedly violated. Counsel further specified the court failed to ensure the jurors "understood and accepted" the principles set forth in Rule 431(b). Defendant's argument the amendment is insufficient under Rule 651(c) is unconvincing.

¶ 60                                   *2. Forensic Testing of the Knife*

- 17 -

¶ 61 Defendant further argues postconviction counsel worsened his forensic-testing claim. According to defendant, trial counsel provided ineffective assistance by not seeking forensic testing of a knife found at the scene of the sexual assaults. In his *pro se* petition, defendant asserted he needed blood testing to impeach A.W. But, according to defendant, postconviction counsel omitted the word "blood" and used the term "forensic testing," draining his claim of substance.

¶ 62 As to defendant's allegations regarding the knife, counsel wrote the following: "Trial counsel provided ineffective assistance of counsel in failing to seek forensic testing of the knife alleged to have been used by Petitioner during the alleged commission of the crimes charged, which would have cast serious doubt upon the complainant's credibility."

¶ 63 We are not convinced this amendment violates Rule 651(c). A request for "forensic testing" of a knife found at the scene includes a request for test for blood or DNA, particularly when the record, as here, shows fingerprints had not been found. The amendment is not so conclusory as to have foreclosed review of defendant's *pro se* claim.

¶ 64 *3. Failure to Attach Affidavits*

¶ 65 Defendant contends postconviction counsel violated Rule 651(c) by not shaping the failure-to-investigate claim into proper legal form. According to defendant, postconviction counsel alleged trial counsel provided ineffective assistance by not investigating witness, Demetrius Moore, but postconviction counsel failed to attach evidentiary support for the allegation. Defendant contends counsel should have provided an affidavit or explained the reason for not doing so.

¶ 66 The State counters by arguing the failure-to-investigate claim was not in

- 18 -

defendant's *pro se* petition and, therefore, postconviction counsel did not fail to comply with Rule 651(c). In addition, the State maintains there was no need to provide evidentiary support as the record contained Moore's sworn testimony on the matter.

¶ 67　　　　Regarding the failure to investigate allegation, counsel wrote in its entirety:

> "Trial counsel provided ineffective assistance of counsel in failing
>
> to investigate and call exculpatory witnesses, including Demetrious
>
> Moore and Andre Woods. Petitioner had provided Moore's name
>
> to his trial attorney as a witness who could offer relevant and
>
> exculpatory evidence on Petitioner's behalf."

Counsel did not attach affidavits from Moore, Woods, or defendant.

¶ 68　　　　We agree with the State. This failure-to-investigate claim did not appear in the original petition and postconviction counsel was under no obligation to add it. *Pendleton*, 223 Ill. at 476 (holding while postconviction counsel "may raise additional issues if he or she so chooses, there is no obligation to do so"). Even if the duty to present a claim in appropriate legal form were to arise when postconviction counsel adds a claim not raised in a *pro se* petition (see *e.g.*, *People v. Milam*, 2012 IL App (1st) 100832, ¶¶ 35-36, 974 N.E.2d 241), an affidavit by Moore, Woods, or defendant was unnecessary as their sworn testimony regarding defendant's claim of innocence appears in the record. When allegations in a postconviction "petition are based upon matters of record, no extrinsic evidence may be required." *People v. Coleman*, 183 Ill. 2d 366, 381, 701 N.E.2d 1063, 1072 (1998).

¶ 69　　　　We are not convinced by defendant's assertion affidavits were required as the parties had agreed the circuit court could not, in ruling on the State's motion to dismiss, rely on

matters from the unauthorized pre-remand evidentiary hearing. That agreement by the parties occurred in June 2018, well after the amended postconviction petition was filed, and does not establish postconviction counsel could not have relied on the sworn testimony to support the allegations in the petition. Defendant cites no case law or other legal authority to support his claim Moore's sworn testimony at the hearing could not serve as the factual basis for his postconviction claim.

¶ 70                                      D. Remedy

¶ 71          The parties have agreed resentencing is required. Defendant asks the court to remand for resentencing or to advance his petition for a third-stage evidentiary hearing. The State argues we should affirm the dismissal of defendant's amended postconviction petition, vacate defendant's sentence, and remand for resentencing.

¶ 72          Ordinarily, a reversal of a dismissal of a petition at the second stage of proceedings under the Act would result in a remand for further proceedings under the Act. However, *Buffer* establishes remand for proceedings under the Act is not necessary when the record does not require factual development for resolution. *Buffer*, 2019 IL 122327, ¶ 46. Here, no factual development is necessary, as the parties agree. Accordingly, we affirm the dismissal of defendant's amended postconviction in part, vacate defendant's sentence, and remand for a new sentencing hearing.

¶ 73                                      III. CONCLUSION

¶ 74          We affirm the circuit court's judgment in part, vacate defendant's sentence, and remand for resentencing.

¶ 75          Affirmed in part; vacated in part; remanded with directions.

- 20 -