2025 IL 130015

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 130015)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
EUGENE SPENCER, Appellant.

*Opinion filed June 5, 2025.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet, Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1 The State charged defendant, Eugene Spencer, with first degree murder (730 ILCS 5/5-4.5-20(a) (West 2010)), attempted murder (720 ILCS 5/8-4(c)(1)(C) (West 2010)), and home invasion (*id.* § 12-11(c)) for offenses that occurred on September 9, 2012, at which time Spencer was 20 years old. On March 5, 2019, a jury convicted Spencer of all three charges. On January 31, 2021, the circuit court

of Cook County sentenced Spencer to an aggregate of 100 years' imprisonment. Relevant here, Spencer appealed his sentence arguing that, as applied to him, it violated the proportionate penalties clause of the Illinois Constitution because it was a *de facto* life sentence. Ill. Const. 1970, art. I, § 11. The appellate court disagreed, finding that Spencer's eligibility for parole pursuant to section 5-4.5-115 of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5-4.5-115 (West 2020)) precluded his 100-year aggregate sentence from being a *de facto* life sentence. 2023 IL App (1st) 200646-U, ¶ 143. We allowed Spencer's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2021). For the following reasons we affirm the judgment of the appellate court.

¶ 2                                          I. BACKGROUND

¶ 3        The facts of this case have been set forth in the appellate court decision (2023 IL App (1st) 200646-U), and we, therefore, summarize only the facts relevant to our disposition. Spencer was arrested on December 23, 2013. On January 29, 2014, a grand jury returned an indictment charging Spencer with multiple offenses including first degree murder, attempted murder, and home invasion.

¶ 4                                          A. Jury Trial

¶ 5        A jury trial was held from February 26 to March 5, 2019. The evidence at trial showed that on September 9, 2012, Spencer, along with Qawmane Wilson and Lorina Johnson planned and executed (1) a murder for hire of Wilson's mother, Yolanda Holmes, and (2) a home invasion. In addition, Spencer shot at and choked Curtis Wyatt, Holmes's boyfriend, who was also present during the home invasion. Spencer admitted to detectives that Wilson had offered him money to commit the murder. Spencer entered the apartment building alone because Wilson had given him the code to the building. Wilson also called Holmes and asked her to unlock the apartment door explaining that he planned to come over. Spencer maintained phone contact with Wilson as he made his way to Holmes's apartment, and he listened to Wilson's instructions through Spencer's earbuds. Spencer admitted entering the apartment and shooting and then stabbing Holmes in the bedroom. Spencer also admitted fighting with Wyatt. At the conclusion of the jury trial,

Spencer was found guilty of all three offenses and found guilty of personally discharging a firearm during the attempted murder and home invasion.

¶ 6    On April 8, 2019, Spencer filed a motion for a new trial, and on June 6, 2019, he filed a supplemental motion for a new trial. On August 15, 2019, the circuit court denied Spencer's motions.

¶ 7                                    B. Spencer's Sentencing Hearing

¶ 8    In August 2019, in anticipation of Spencer's sentencing hearing, defense counsel asked the circuit court to review two appellate court decisions—*People v. Buffer*, 2017 IL App (1st) 142931, and *People v. House*, 2019 IL App (1st) 110580-B—that concerned changes in sentencing law for young offenders.[1] The circuit court stated that it was familiar with the cases and directed the parties to address them at the sentencing hearing.

¶ 9    On January 31, 2020, the sentencing hearing was held. Spencer was 28 years old. Prior to the hearing, the circuit court received a presentence investigation report (PSI), Holmes's sister's and Wyatt's victim impact statements, and testimony regarding Spencer's disciplinary history during pretrial custody.

¶ 10    The PSI provided information regarding Spencer's background, reflecting— *inter alia*—that Spencer's mother raised him and his nine siblings after his father left when Spencer was a child. Spencer described his childhood as "fair" but unstable. Before age 11, he lived with 15 other people in his grandmother's apartment in a public housing complex. His family struggled financially, and his basic needs were not always met. When the housing complex was torn down, Spencer moved with his mother and siblings to better living conditions but continued to experience financial difficulties. From about age 12 to 16, Spencer suffered physical abuse by his mother's boyfriend. Spencer reported that he had a good relationship with his siblings until his mother died in the year between his

---

[1]This court allowed leave to appeal in both cases. See *People v. House*, 2021 IL 125124, ¶ 31 (finding the record needed further development for an as-applied challenge and remanding to the circuit court for second stage postconviction proceedings); *People v. Buffer*, 2019 IL 122327, ¶¶ 41-42 (determining that any sentence exceeding 40 years is a *de facto* life sentence).

crimes and arrest; his father died sometime in 2012. Spencer attended multiple schools during his childhood and left school during the eleventh grade because his home life was unstable and he was struggling to eat and survive. While in school he attended a special education program for learning issues. Spencer described himself as a "C" and "D" student who did not get along with his teachers because he did not understand the work. He was suspended once for fighting. And from age 16 to 24, Spencer was "affiliated" with the Gangster Disciples.

¶ 11 In 2012, the year preceding his arrest, Spencer worked at a moving company earning about $1,200 per month. He lived with a friend's mother and paid $75 per month in rent. Spencer related that he was in good physical health but suffered from high blood pressure and had a torn ligament in his knee and nerve damage in his neck. He began abusing marijuana at age 13, alcohol at age 18, and cocaine at age 21. Spencer experienced negative consequences as a result of his substance abuse, but he never received treatment. While in pretrial custody, Spencer twice attempted suicide and was prescribed medication for depression and anxiety. Spencer had no prior criminal history.

¶ 12 The circuit court also heard testimony and received documentation regarding Spencer's disciplinary history while in pretrial custody and the resulting criminal charges, which remained pending at the time of sentencing. Spencer had been disciplined 33 times. On 13 occasions Spencer masturbated in front of other people—including assistant public defenders, nurses, and prison guards—and sometimes refused to stop even after being ordered to do so. On nine other occasions, Spencer battered staff or fought fellow inmates.

¶ 13 C. The Circuit Court

¶ 14 The circuit court recognized that it needed to determine Spencer's sentences in accordance with the seriousness of his crimes and after considering the goal of restoring him to useful citizenship. Accordingly, before sentencing Spencer, the court reviewed the PSI "two or three times" and considered the aggravating and mitigating factors and evidence. The court found Spencer's youth and lack of a prior criminal record to be mitigating. However, the court attached great significance to the seriousness of his offenses, emphasizing that Spencer agreed to kill for $4,000, shot and then stabbed the victim to make sure she was dead, and

- 4 -

tried to kill Wyatt. The court found Spencer's actions to be "cold-hearted," noted his problems with authority while in pretrial custody, and could not provide " one good reason he should be back on the street again."

¶ 15    Spencer's crimes subjected him to consecutive prison terms of 20 to 60 years for first degree murder (730 ILCS 5/5-4.5-20(a) (West 2010)), 6 to 30 years for attempted murder plus a mandatory firearm enhancement of 20 years (720 ILCS 5/8-4(c)(1)(C) (West 2010); 730 ILCS 5/5-4.5-25(a) (West 2010)), and 6 to 30 years for home invasion plus a mandatory firearm enhancement of 20 years (720 ILCS 5/12-11(c) (West 2010);[2] 730 ILCS 5/5-4.5-25(a) (West 2010)). See 730 ILCS 5/5-8-4(d)(1) (West 2010) (providing for mandatory consecutive sentences). Because Spencer was under 21 when he committed the offenses, he is eligible for parole after serving 20 years of the aggregate sentence. 730 ILCS 5/5-4.5-115(b) (West 2020).

¶ 16    The court found that the statutorily authorized sentences for Spencer's crimes were appropriate. The court sentenced Spencer to consecutive prison terms of 50 years for first degree murder, 25 years for attempted murder, and 25 years for home invasion, under a misguided assumption that the minimum sentence for the latter two crimes was 21 years.[3] On February 26, 2020, Spencer filed a motion to reconsider his sentence. On March 4, 2020, the circuit court denied Spencer's motion. Spencer filed a timely notice of appeal on March 4, 2020.

¶ 17                        D. The Appellate Court

¶ 18    Relevant here, on appeal, Spencer claimed that his sentence was unconstitutional. The appellate court, in a split decision, found that Spencer could not establish that his 100-year sentence of imprisonment violated the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11) where, as a 20-year-old at the time that he committed the offense, he was eligible for parole review after

---

[2]This provision has since been renumbered as section 19-6. See Pub. Act 97-1108, § 10-5 (eff. Jan. 1, 2013).

[3]The minimum sentence for attempted murder and home invasion was 26 years, because the sentencing provision required "20 years shall be added to the term of imprisonment imposed by the court." See 720 ILCS 5/8-4(c)(1)(C), 12-11(c) (2010).

serving 20 years (730 ILCS 5/5-4.5-115(b) (West 2020)). 2023 IL App (1st) 200646-U, ¶ 135.

¶ 19   The appellate court majority observed that section 5-4.5-115(b) of the Code of Corrections (730 ILCS 5/5-4.5-115(b) (West 2020)) created parole review for offenders under the age of 21 at the time of the offense. 2023 IL App (1st) 200646-U, ¶ 142. This legislation was enacted in response to emerging case law to address youthful offenders under the age of 21. *Id.* The court recognized that, in assessing whether a *de facto* life sentence has been imposed, the court must consider the defendant's earliest opportunity for release. *Id.* ¶ 143. Therefore, when section 5-4.5-115(b) applies, the defendant's sentence is not a *de facto* life sentence, as the defendant is eligible for parole after serving 20 years of his sentence. *Id.* The court recognized that, because Spencer has a meaningful opportunity to obtain release before serving more than 40 years' imprisonment, he was not sentenced to a *de facto* life sentence and his sentence did not violate the proportionate penalties clause. *Id.* ¶ 135. The court held that Spencer's as-applied constitutional challenge based on *Miller v. Alabama*, 567 U.S. 460 (2012), failed. 2023 IL App (1st) 200646-U, ¶ 143.

¶ 20   Justice Hyman concurred in part and dissented in part. *Id.* ¶ 150 (Hyman, J., concurring in part and dissenting in part). Justice Hyman concurred with the majority that Spencer could not bring his emerging adult claim in a direct appeal (*id.* ¶ 152) but maintained that Spencer must raise his claim in postconviction proceedings as directed by *People v. Harris*, 2018 IL 121932 (2023 IL App (1st) 200646-U, ¶ 157). Justice Hyman further faulted the majority for not applying the cruel or degrading standard that governs proportionate penalties claims to Spencer's case and noted only that eligibility for parole did not control that analysis. *Id.* ¶¶ 164-67.

¶ 21   We allowed the American Civil Liberties Union of Illinois to file an *amicus curiae* brief in support of Spencer's position. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 23     Spencer argues that, as applied to him, his *de facto* life sentence violates the Illinois proportionate penalties clause and Illinois's youth parole statute (730 ILCS 5/5-4.5-115(b) (West 2020)) does not cure the imposition of an otherwise unconstitutional sentence. Spencer maintains that the imposition of his 100-year *de facto* life sentence without consideration of *Miller*-based, youth-related factors in mitigation violates the proportionate penalties clause. Spencer contends that, because Illinois's parole statute does not provide him with a meaningful opportunity for parole, it does not foreclose his claim that his sentence violates the proportionate penalties clause. Spencer requests that this court remand this case for a new sentencing hearing.

¶ 24                                A. Standard of Review

¶ 25     An as-applied constitutional challenge is a legal question that we review *de novo*. *People v. House*, 2021 IL 125124, ¶ 18; *People v. Coty*, 2020 IL 123972, ¶ 22.

¶ 26            B. Spencer's Sentence Is Not a *De Facto* Life Sentence

¶ 27            1. *Miller v. Alabama* Does Not Apply to Emerging Adults

¶ 28     Spencer argues that, based on *Miller*, his sentence is an unconstitutional *de facto* life sentence that violates the Illinois proportionate penalties clause. We disagree.

¶ 29     In *Miller*, the United States Supreme Court held that the eighth amendment (U.S. Const., amend. VIII) "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479. The Court determined that such sentencing schemes were constitutionally flawed because juveniles "are constitutionally different from adults for purposes of sentencing" (*id.* at 471) and mandatory sentencing schemes, "by their nature, preclude a sentencer from taking account of [those differences]" (*id.* at 476). The Court reasoned that, by making irrelevant the "offender's age and the wealth of characteristics and circumstances attendant to it" (*id.*), mandatory life-without-

parole sentencing schemes simply pose "too great a risk of disproportionate punishment" (*id.* at 479). See *People v. Wilson*, 2023 IL 127666, ¶ 26. The primary basis for the *Miller* Court's reasoning is that a juvenile's character is not as well formed as an adult's character, a juvenile's traits are less fixed than an adult's traits, and a juvenile's actions are less likely to be evidence of irretrievable depravity. *People v. Clark*, 2023 IL 127273, ¶ 55 (citing *Miller*, 567 U.S. at 471).

¶ 30    In *Clark*, 2023 IL 127273, ¶ 54, this court found that "*Miller* did not prohibit life sentences for juveniles but, instead, held that the eighth amendment required sentencing courts to have discretion in sentencing juveniles after considering the juvenile's youth and the attendant characteristics of youth."

¶ 31    Furthermore, in *People v. Moore*, 2023 IL 126461, ¶ 40 (quoting *Clark*, 2023 IL 127273, ¶ 61, quoting *People v. Dorsey*, 2021 IL 123010, ¶ 74), this court observed that " ' "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a [juvenile offender] to raise a claim under the proportionate penalties clause." ' " This court clarified that, as *Miller* directly applies only to juveniles and does not apply to young adults, it also does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause in a successive postconviction petition. *Id.* ¶¶ 38, 42. Furthermore, this court found that *Miller* did not change the law applicable to discretionary sentences imposed on young adult offenders, *i.e.*, 18- to 20-year-olds. *Moore*, 2023 IL 126461, ¶ 44; *Harris*, 2018 IL 121932, ¶ 58 ("[T]he Supreme Court has clearly and consistently drawn the line between juveniles and adults for the purpose of sentencing at the age of 18.").

¶ 32    Additionally, we observe that claims for extending *Miller* to offenders 18 years of age or older have been repeatedly rejected. See, *e.g.*, *United States v. Williston*, 862 F.3d 1023, 1039-40 (10th Cir. 2017) (declining to expand the holding of *Miller* to offenders who are " 'just over age 18' " at the time of their offenses); *United States v. Marshall*, 736 F.3d 492, 500 (6th Cir. 2013) (determining considerations of efficiency and certainty require a bright line separating adults from juveniles, and for purposes of the eighth amendment, an individual's eighteenth birthday marks that bright line); *People v. Argeta*, 149 Cal. Rptr. 3d 243, 245-46 (Ct. App. 2012) (rejecting argument to extend *Miller* to an offender who was over 18 years old at the time of his offense); *People v. Abundio*, 165 Cal. Rptr. 3d 183, 190 (Ct.

App. 2013) (same); see also *Harris*, 2018 IL 121932, ¶ 61. We agree with those decisions and continue to hold that *Miller* only applies to juveniles and does not apply to emerging adults.

¶ 33                    2. The Parole Review Statute Precludes Spencer's Sentence
                         From Being a *De Facto* Life Sentence

¶ 34        While *Miller* does not directly apply to Spencer, this court recognized the science that helped form the basis for the *Miller* decision may assist emerging adult defendants in supporting an as-applied, proportionate penalties clause challenge. *Harris*, 2018 IL 121932, ¶ 46. Thus, emerging adult defendants, like Spencer in this case, often assert their sentence is a *de facto* life sentence based on this court's *Miller* cases.

¶ 35        The statutory scheme under which Spencer was sentenced required an aggregate sentence of 72 years in prison—a minimum of 20 years for first degree murder (730 ILCS 5/5-4.5-20(a) (West 2010)) and a minimum of 26 years for attempted murder (720 ILCS 5/8-4(c)(1)(C) (West 2010)) and 26 years for home invasion (*id.* § 12-11(c))—and provided that Spencer, who was under the age of 21 at the time of his offenses, shall be eligible for parole review by the Prisoner Review Board after serving 20 years or more of his sentences (730 ILCS 5/5-4.5-115(b) (West 2020)). Thus, Spencer was sentenced under a statutory scheme that makes him eligible for parole before he spends more than 40 years in prison. See *Dorsey*, 2021 IL 123010, ¶¶ 39, 50; *People v. Buffer*, 2019 IL 122327, ¶ 40 (finding that a prison sentence of 40 years or more constitutes a *de facto* life sentence).

¶ 36        The General Assembly, in response to case law regarding youthful offenders under the age of 21, enacted the parole review statute, which provides in relevant part:

        "(b) *** A person under 21 years of age at the time of the commission of first degree murder who is sentenced on or after June 1, 2019 (the effective date of Public Act 100-1182) shall be eligible for parole review by the Prisoner Review Board after serving 20 years or more of his or her sentence or sentences, except for those subject to a term of natural life imprisonment under Section 5-

- 9 -

8-1 of this Code or any person subject to sentencing under subsection (c) of Section 5-4.5-105 of this Code.

* * *

(j) ***

* * *

In considering the factors affecting the release determination under 20 Ill. Adm. Code 1610.50(b), the Prisoner Review Board panel shall consider the diminished culpability of youthful offenders, the hallmark features of youth, and any subsequent growth and maturity of the youthful offender during incarceration.

* * *

(m) *** [A] person denied parole under subsection (j) of this Section, who is serving a sentence or sentences for first degree murder or aggravated criminal sexual assault shall be eligible for a second and final parole review by the Prisoner Review Board 10 years after the written decision under subsection (k) of this Section." 730 ILCS 5/5-4.5-115(b), (j), (m) (West 2020).

¶ 37    In *Dorsey*, 2021 IL 123010, ¶ 62, this court, referencing the day-for-day credit available to the defendant, found that "[w]e are simply setting forth the sentencing scheme that applies to defendant's sentence. And we believe it undeniable that the ability of defendant to earn day-for-day credit under that scheme presents a 'meaningful opportunity' for release from prison short of a *de facto* life sentence." This court found that a judicially imposed sentence that is more than 40 years but offers day-for-day, good-conduct sentencing credit does not cross the *Buffer* line if it offers the opportunity to demonstrate maturity and obtain release within 40 years or less of incarceration. *Id.* ¶¶ 64-65; see *People v. Reyes*, 2016 IL 119271, ¶ 10 (determining that courts look to the earliest opportunity for release of the defendant to assess whether a *de facto* life sentence has been imposed).

¶ 38    As observed by the appellate court in *People v. Doe*, 2024 IL App (1st) 220811-U, ¶ 22:

"the *Dorsey* decision concerned the availability of day-for-day, good-conduct, and did not specifically address the situation presented here where a defendant is sentenced to more than 40-years in prison but is nevertheless eligible for parole under section 5-4.5-115 of the Code. However, in reaching its decision, the *Dorsey* court specifically analogized day-for-day, good-conduct to the possibility of parole. [*Dorsey*, 2021 IL 123010, ¶¶ 53-54] ('The statutory scheme here, which allows for the opportunity of release short of a *de facto* life sentence, is at least on par with discretionary parole for a life sentence[.]')."

¶ 39    Based on this court's analogy, numerous appellate court decisions held that considering *Dorsey* and its recognition of the relationship between day-for-day, good-conduct, and the possibility of parole, the availability of parole under section 5-4.5-115 of the Code of Corrections (730 ILCS 5/5-4.5-115 (West 2020)) connotes that sentences of greater than 40 years in prison do not amount to *de facto* life sentences. See *People v. Kendrick*, 2023 IL App (3d) 200127, ¶ 43 (finding that, if the defendant has a reasonable opportunity for release before serving more than 40 years in prison, he has not received a *de facto* life sentence); *People v. Cavazos*, 2023 IL App (2d) 220066, ¶ 60 (determining that the parole statute affords the defendant a meaningful opportunity for release before serving a *de facto* life sentence); *People v. Elliott*, 2022 IL App (1st) 192294, ¶ 56 (finding that the defendant's 70-year sentence was not a *de facto* life sentence where the defendant met the criteria to be eligible for parole review after serving 20 years of his sentence); *People v. Beck*, 2021 IL App (5th) 200252, ¶ 26 (determining that the parole statute affords the defendant a meaningful opportunity for release based on his maturity and rehabilitation before a *de facto* life sentence of over 40 years' imprisonment is served).

¶ 40    We find that the statutory provision invoked to review parole petitions for emerging adults convicted of first degree murder provides that the opportunity for release requires consideration of "the diminished culpability of youthful offenders, the hallmark features of youth, and any subsequent growth and maturity of the youthful offender during incarceration." See 730 ILCS 5/5-4.5-115(j) (West 2020). Spencer was under 21 years of age on September 9, 2012, the date of the offenses. Spencer's sentencing hearing occurred on January 31, 2020—after the effective date of this provision of June 1, 2019. Therefore, Spencer meets the criteria to be eligible for parole review after serving 20 years of his sentence. See *id.* § 5-4.5-

- 11 -

115. Consequently, the applicable sentencing scheme allows Spencer a meaningful opportunity to obtain release before he spends 40 years in prison. See *Dorsey*, 2021 IL 123010, ¶ 54; *Buffer*, 2019 IL 122327, ¶ 40. Accordingly, Spencer was not sentenced to a *de facto* life sentence. To the extent that *People v. Gates*, 2023 IL App (1st) 211422, ¶¶ 38-49, and *People v. Carrasquillo*, 2023 IL App (1st) 211241, ¶ 51, can be interpreted to hold that sentences over 40 years are *de facto* life sentences despite the defendant's eligibility for parole, they are overruled.

¶ 41                                       C. Spencer Is Not Foreclosed From Bringing
His as-Applied Challenge to His Sentence
Pursuant to the Illinois Proportionate Penalties Clause

¶ 42        Notwithstanding the fact that Spencer is not serving a *de facto* life sentence, he is not foreclosed from bringing an as-applied challenge to his sentence pursuant to the Illinois proportionate penalties clause. Thus, the appellate court erred by finding that, because Spencer did not receive a *de facto* life sentence, he cannot establish that his sentence violated the proportionate penalties clause. See 2023 IL App (1st) 200646-U, ¶ 143. Article I, section 11, of the Illinois Constitution, titled "Limitation of Penalties After Conviction," states: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The mandate set forth in article I, section 11, provides a check on the judiciary, *i.e.*, the individual sentencing judge, as well as the legislature, which sets the statutory penalties. *People v. Clemons*, 2012 IL 107821, ¶ 29. A defendant's challenge to the decision of the individual sentencing judge is based on the defendant's belief that, although the sentence comports with the sentencing statute, the sentence nonetheless violates article I, section 11, because the judge failed to set the sentence "according to the seriousness of the offense and with the objective of restoring the [defendant] to useful citizenship." Ill. Const. 1970, art. I, § 11; *Clemons*, 2012 IL 107821, ¶ 30.

¶ 43        A defendant may challenge a sentence of any length. See *People v. Fuller*, 187 Ill. 2d 1, 5-6 (1999) (as-applied challenge to Class B misdemeanor punishable by up to six months' imprisonment). Further, the Illinois Constitution does not limit a proportionate penalties challenge to just juveniles or individuals with life sentences.

*People v. Hilliard*, 2023 IL 128186, ¶ 29. In addition, this court has not barred young adult defendants from raising as-applied proportionate penalties clause challenges to life sentences based on the evolving science regarding juvenile maturity and brain development. *Clark*, 2023 IL 127273, ¶ 87 (citing *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44 (19-year-old defendant sentenced to a term of natural life in prison)).

¶ 44     "All as-applied constitutional challenges are, by definition, reliant on the application of the law to the specific facts and circumstances alleged by the challenger. 'Therefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review.' " (Emphasis omitted.) *People ex rel. Hartrich v. 2010 Harley-Davidson*, 2018 IL 121636, ¶ 31 (quoting *Thompson*, 2015 IL 118151, ¶ 37); see *Harris*, 2018 IL 121932, ¶¶ 1, 41 (18-year-old defendant sentenced to a mandatory minimum aggregate term of 76 years' imprisonment; this court stated that the record needed to be sufficiently developed in the circuit court through an evidentiary hearing and findings of fact to review the defendant's constitutional claim); *House*, 2021 IL 125124, ¶¶ 5, 31 (19-year-old defendant sentenced to a mandatory natural life term for murder; this court determined that the appellate court erred in holding that his natural life sentence violated the proportionate penalties clause as applied to him without a developed evidentiary record or factual findings on the issue).

¶ 45     Based on this general principle that as-applied constitutional claims cannot ultimately succeed absent a sufficiently developed evidentiary record, we find that the proper venue for Spencer's as-applied challenge is in a postconviction proceeding. See *Harris*, 2018 IL 121932, ¶ 48 (concluding that the 18-year-old defendant's as-applied proportionate penalties challenge was "more appropriately raised" in a postconviction proceeding rather than on direct appeal); *Thompson*, 2015 IL 118151, ¶ 44 (finding that a 19-year-old defendant was not necessarily foreclosed from raising an as-applied challenge in the trial court and observing that the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2012)) was designed to resolve such constitutional claims).

¶ 46     The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a means for individuals serving criminal sentences to assert that their convictions resulted from a substantial denial of their constitutional rights. *Hilliard*,

2023 IL 128186, ¶ 18. Postconviction proceedings are commenced by the filing of a petition, which must, among other things, "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2020). Accordingly, we find that Spencer is not foreclosed from bringing his as-applied challenge to his 100-year sentence under the proportionate penalties clause through a postconviction proceeding.

¶ 47                                III. CONCLUSION

¶ 48        In sum, we continue to hold that *Miller* only applies to juveniles and not to emerging adults. We find that, while Spencer is not serving a *de facto* life sentence, the appellate court erred by concluding that fact prohibited him from establishing his sentence violated the proportionate penalties clause. Lastly, we hold that Spencer is not foreclosed from bringing his proportionate penalties claim in a postconviction petition. The judgments of the appellate court and the circuit court of Cook County are affirmed.

¶ 49        Judgments affirmed.