NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241436-U

NO. 4-24-1436

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 2, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| YARII A. MASSEY, | ) | No. 07CF561 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John Casey Costigan, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Steigmann and DeArmond concurred in the judgment.

**ORDER**

¶ 1  *Held*:  (1) Defendant was not entitled to a *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181 (1984)), as the alleged *pro se* claims of ineffective assistance of counsel were not raised until over 14 years after trial and defendant had the assistance of other counsel at trial, on direct appeal, and for postconviction review.

(2) Defendant, a juvenile at the time of the offenses, was not sentenced to a *de facto* life sentence. *People v. Spencer*, 2025 IL 130015, establishes the Illinois parole statute provides defendant a meaningful opportunity for release before a *de facto* life sentence would be served.

(3) Defendant received the mandatory minimum sentences for his offenses, rendering ineffectual his challenges to the trial court's alleged improper consideration of sentencing factors and the alleged excessiveness of his sentence.

¶ 2  In 2008, defendant, Yarii A. Massey, was convicted by a jury of six counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(1), (a)(2) (West 2006)) and three counts of residential burglary (*id.* § 19-3(a)), crimes committed when he was 16 years old. He

was sentenced to an aggregate term of 92 years in prison. After this court found, in 2020, defendant's 2008 sentence violated the eighth amendment's prohibition of cruel and unusual punishment (U.S. Const., amend. VIIII), we remanded for resentencing. *People v. Massey*, 2020 IL App (4th) 180651-U, ¶¶ 42, 72. In August 2024, defendant was resentenced to an aggregate term of 76 years' imprisonment.

¶ 3        On appeal, defendant argues (1) he was improperly denied a *Krankel* inquiry (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) when he raised *pro se* allegations of ineffective assistance of counsel; (2) his 76-year sentence is unconstitutional, as the Illinois parole statute fails to provide him a meaningful opportunity for release before he would serve a *de facto* life sentence; (3) the trial court applied improper sentencing factors; and (4) his sentence is excessive. We affirm.

¶ 4                                I. BACKGROUND

¶ 5                            A. Trial and Direct Appeal

¶ 6        In 2007, defendant was indicted on six counts of aggravated criminal sexual assault against one victim, A.W. (720 ILCS 5/12-14(a)(1), (a)(2) (West 2006)) (counts I-III, VII-IX), and three counts of residential burglary (*id.* § 19-3(a)) (counts IV-VI). In the burglary charges, the State alleged three victims, including A.W., in three separate residences. The events allegedly occurred over one night. After defendant was charged, the trial court appointed the McLean County Office of the Public Defender to represent defendant. Assistant Public Defender Ronald Lewis appeared on defendant's behalf at court hearings until February 8, 2008, when Lewis withdrew as counsel and Larry Spears, private counsel, entered his appearance. Spears represented defendant through his trial and for his posttrial motions.

¶ 7        After the June 2008 jury trial, defendant was found guilty on all counts. The facts

of this trial are set forth in detail in the order affirming defendant's conviction and sentence. *People v. Massey*, No. 4-08-0915 (May 11, 2010). According to the evidence, on May 26, 2007, defendant repeatedly sexually assaulted A.W. in her residence, used a knife to threaten A.W. during the assaults, and prevented A.W. from leaving as she attempted to flee. Defendant was sentenced to a prison term of 92 years. On direct appeal, we affirmed defendant's convictions and sentence. *Id.*

¶ 8                    B. Postconviction Claims and Remand for Resentencing

¶ 9          In June 2011, defendant filed a *pro se* petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)). In this petition, defendant asserted multiple ineffective-assistance-of-counsel claims. In September 2011, the trial court advanced defendant's *pro se* petition for second-stage proceedings under the Act and appointed counsel, W. Keith Davis. Davis did not file an amended petition but moved to withdraw as defendant's postconviction counsel and filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984). After multiple hearings, where the testimony of two purported exculpatory witnesses was presented, and the filing of an amended petition for postconviction relief, the trial court denied defendant's postconviction petition.

¶ 10          Defendant appealed the denial of his postconviction petition, and this court reversed and remanded for second-stage proceedings. We concluded Davis failed to comply with Rule 651(c) when he abandoned defendant's claims, and we remanded for the appointment of new counsel. *People v. Massey*, 2015 IL App (4th) 130651-U, ¶¶ 31, 41.

¶ 11          On remand, Steven J. Weinberg filed, in December 2016, an amended petition for postconviction relief on defendant's behalf, asserting over 20 claims, including allegations trial counsel provided ineffective assistance by failing to challenge false testimony, object to

impermissible identification testimony, object to the improper admonishment of prospective jurors, investigate and call exculpatory witnesses, call a medical witness to testify at trial, and seek forensic testing of a knife and condom. In this amended petition, defendant further asserted as he was 16 years old when the alleged crimes occurred, he had been impermissibly sentenced to the functional equivalent of a life sentence. Defendant argued he was entitled to a new sentencing hearing under *Graham v. Florida*, 560 U.S. 48, 82 (2010). The State moved to dismiss defendant's petition. The trial court granted the petition. Defendant appealed. On appeal, this court found defendant's 92-year sentence was prohibited by the eighth amendment and, on March 3, 2020, remanded for resentencing. *Massey*, 2020 IL App (4th) 180651-U, ¶¶ 42, 72.

¶ 12                                 C. Remand for Resentencing

¶ 13                                 1. *Motion to Dismiss Counsel*

¶ 14            On May 14, 2020, the McLean County Office of the Public Defender was appointed to represent defendant on resentencing. Mackenzie Frizzell, an assistant public defender, began appearing for defendant in November 2022.

¶ 15            On January 6, 2023, defendant filed a *pro se* "Motion to Dismiss Counsel Frizzell MacKenzie and Ron Lewis," both attorneys with the public defender's office. In his motion, defendant alleged he met Lewis in 2007 and "Lewis is one of the worst Attorneys [he had] ever had from the Public [Defender's] office in McLean County." Defendant alleged the following:

> "On one of [defendant's] last visits in 2008 with Ron
>
> Lewis[,] Mr. Lewis stated to [defendant] to take a deal of 12 years.
>
> Mr. Lewis stated to [defendant] that he would be back to visit
>
> [him] in three weeks and that [defendant] had to take the 12
>
> years[.] [O]n [defendant's] last visit[,] Mr. Lewis stated he did not

have much time to visit with [defendant]. So what is my decision. [Defendant] stated to counsel Ron Lewis that [he] would take the deal of 12 years as a plea. Counsel Ron Lewis stated to [defendant] after [defendant] agreed to 12 years that he [knew] that he stated 12 years on [their] last visit but he [knew] that he could get [defendant] 15 years. As a deal to plea[d] to. [Defendant] stated to Ron Lewis that [he] told[defendant] to take 12 years [and] now that [defendant] agreed to the deal now [Lewis was] asking [defendant] to take 15 years. Before [Lewis] could speak [defendant] walked away[.] [Defendant] called for the [correctional officers] to take [him] back to [his] unit. [Defendant] called [his] mother and told her that [Lewis] is playing [him][.] [O]n [defendant's] next court Date[,] paid counsel Larry J. Spears was there to take [Lewis] off [defendant's] case. For counsel's lies[,] [defendant] ended up with 92 years for going to trial.

[Defendant] asked [Lewis] on December 2nd 2022 for [an] affidavit as to the plea Agreement *** to show the court that [he] tried to do the right thing and take a plea of 12 years that was told to [him] to take by [Lewis]. ***

[Defendant] had great hopes of working with [Frizzell] but before [he] could go on to new [topics,] [Frizzell] stated that she agreed with [Lewis] in him not [giving defendant an] affidavit. [F]or that reason alone[,] [Frizzell] cannot be on [defendant's]

case."

Defendant, stating he did not feel safe with the public defender, asked to proceed *pro se*.

Defendant further listed additional allegations of ineffective assistance:

> "Outside of counsel Ron Lewis lying about Plea[,] counsel never
> investigated witnesses that was stated to him by [defendant],
> counsel [kept] taking continuance[s] for the state knowing
> [defendant] asked for a speedy trial ***, counsel never put in
> [pretrial motions] that would have been helpful to [defendant's]
> case like separating the Residential Burglary charges, [getting] the
> weapon dismissed, and [letting the] court know that [defendant]
> did not have a *Gerstein* hearing (see *Gerstein v. Pugh*, 420 U.S.
> 103 (1975))] within 48 hours of [his arrest]."

¶ 16        After a hearing, the trial court granted defendant's motion, and defendant, for a time, proceeded *pro se*. On October 18, 2023, defendant asked for the reappointment of the public defender as his counsel. The court granted defendant's request. Frizzell represented defendant through sentencing.

¶ 17                         2. *Defendant's Sentencing*

¶ 18        On August 5, 2024, the sentencing hearing began with the reading of A.W.'s victim impact statement. The statement described the resulting impact of the offenses, including suicide attempts, psychological disorders, nightmares, and other parenting, financial, and health challenges.

¶ 19        In mitigation, defendant presented the stipulated testimony of Danielle Nesi, PhD, which we summarize briefly here. Dr. Nesi holds a doctorate in developmental psychology. Dr.

Nesi conducted a forensic developmental analysis of defendant and tendered her report. In summary, defendant reported his childhood was riddled with physical and emotional abuse. Defendant's mother verbally assaulted him daily, telling him routinely to " 'stop acting like a bitch,' " and had once beaten him in the head with a belt buckle, causing injuries requiring hospital treatment. Defendant's mother beat him with other items, such as mops and shovels. Defendant's grandmother, with whom defendant resided in Chicago at age 9 or 10, was addicted to crack cocaine. Defendant also endured pervasive sexual molestation, beginning at age four. At age 10, defendant was raped by a 35-year-old woman. Defendant began drinking at age 10. He used cannabis at age 13. His grandmother died when he was 16, leading defendant to use cannabis to dull his pain. Dr. Nesi's testing revealed defendant experienced more different types of childhood trauma than over 99.7% of all children and over 99% of all juvenile offenders.

¶ 20    Upon his imprisonment, defendant received mental-health treatment. Dr. Nesi opined defendant had developed positive coping skills. She concluded defendant had begun to understand his trauma and vulnerability. Defendant had engaged in anti-violence training, role modeling, and artistic expression. He had also enrolled in a "correspondence Sex Addicts Anonymous program." He was on waiting lists for employment at the prison.

¶ 21    In aggravation, the State emphasized the facts from the trial. The State also noted defendant had eight in-custody disciplinary tickets, with his last segregation order in 2014. None of the tickets involved violence.

¶ 22    Defendant made a statement in allocution. Defendant said to A.W., his family, and the courtroom, "I apologize for my actions." He stated this "is my fault, period." Defendant repeatedly apologized, stating:

    "I know that's like just easy to just say sorry, but I don't know

every act that I did to that person. I don't. I, period, I do not know.

But the State stated that I did A, B, C, D, I apologize for each and

every one of them things."

¶ 23    On August 7, 2024, the trial court announced its decision. The court stated it considered the *Miller v. Alabama*, 567 U.S. 460 (2012), factors in making its decision and noted it understood *Graham* and other cases that addressed juvenile sentencing. The court noted the harm to A.W. and the community. The court observed defendant had, while awaiting trial, committed offenses, in 2007, such as a fight, threatening staff, coordinating a gang attack, and, in 2008, assault and battery. Eight disciplinary reports had been filed against defendant while he was in the Illinois Department of Corrections. The court observed it considered deterrence and stated it was important to let defendant and others know the offenses would not be tolerated. The court observed defendant was on probation when the offenses occurred. As to mitigation, the court noted only one prior adjudication, a burglary when defendant was 16. The court found his criminal record was not significant. The court agreed Dr. Nesi had the credentials to be qualified as an expert but found her report had undertones of bias toward juvenile sentencing laws. The court believed Dr. Nesi's report advocated on defendant's behalf rather than acted as fact-based opinion. The court concluded some information provided by defendant was relevant to his sentencing, and the court considered that information when imposing his sentence.

¶ 24    The trial court found defendant was behind intellectually. Defendant suffered learning disabilities and had been enrolled in special education. The court acknowledged defendant's childhood trauma and understood defendant's father was not present in defendant's childhood. The court believed "the cognitive and developmental disability as a result of" defendant's tough childhood "is an accurate assessment." The court further stated:

"[T]hat being said, I am also convinced that you knew the difference between right and wrong. I'm convinced that you knew it was wrong to break into Mr. Pulletikurti's and Ms. Stringwell's home in the middle of the night and commit the offense of residential burglary. Yet, it didn't stop there. You then moved on to A.W.'s home. Here, the evidence shows that you broke into the home, and there was well over an hour to where multiple sexual assaults took place, several of where A.W. had a dangerous weapon, a knife, at her throat and body with her being threatened with her life or sexual assault. Even if a person had experienced sexual abuse growing up as a child, I'm convinced that that conduct does neither justify nor explain the wrong that was committed in this particular case.

I understand that young adults and adolescents act impulsively. I completely get that. This is especially true when they have been subjected to childhood trauma. The White Paper shows that. The forensic analysis shows that. The White Paper shows that adolescent brain decisionmaking—that adolescent brain development and decisionmaking and understanding of consequences continues to develop after someone is 18 years old. As a matter of fact, in males it goes up to 26 years old, according to a number of studies. And I have seen this adolescent impulsivity in a number of cases that I have had. Again, not comparing

anything with regard to this case, but usually it's a situation to where adolescents get into an argument or a fight, and one pulls out a gun and shoots and kills the other. An impulsive decision not thinking about their actions or the consequences of their actions. Another lesser example, a youth sees an unlocked bike and hops on it and steals it. An impulsive decision that otherwise may not have been made as an adult. But, in this case, there was nothing impulsive about the acts. Two residential burglaries that occurred inside homes. Perhaps an argument could be made for impulsive nature for these particular allegations or crimes that were committed.

But, again, it doesn't stop there. There's break-ins into A.W.'s home, and he stays there more than an hour, well in upwards of an hour. Multiple assaults take place. There's nothing impulsive about this. I'm convinced that age had little to nothing to do with this particular crime. A person 16 years old 6 months 15 days, even with cognitive deficits, learning disability, and a history of trauma is going to know the criminality of his acts and the potential consequences that result from this particular crime."

¶ 25   The trial court believed defendant had taken a degree of accountability for his actions. The court believed it had discretion under section 5-4.5-105 of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-4.5-105 (West 2024)) to apply the dangerous weapon enhancement in sections 12-14(a)(1), (d)(1) of the Criminal Code of 2012 (Criminal Code) (720

- 10 -

ILCS 5/12-14(a)(1), (d)(1) (West 2006)) and ordered the enhancement imposed. On counts I, II, VII, and IX, the aggravated criminal sexual assault charges involving a knife, the court sentenced defendant to consecutive sentences of 16 years; on counts III and VIII, the aggravated criminal sexual assault charges not involving a knife, the court sentenced defendant to consecutive terms of 6 years. On counts IV through VI, the residential burglary counts, the court imposed sentences of four years and ordered those to run concurrently with each other and with the sentences for aggravated sexual assault.

¶ 26        This appeal followed.

¶ 27                               II. ANALYSIS

¶ 28                        A. No *Krankel* Hearing Is Required

¶ 29        Defendant asserts the trial court erred by not conducting a *Krankel* inquiry when he made posttrial ineffective-assistance-of-counsel claims. Defendant points to his December 2022 *pro se* motion, filed in January 2023, in which he asked to represent himself. In that motion, defendant alleged ineffectiveness of his attorneys. Defendant contends, due to those allegations, this court should remand and order a hearing pursuant to *Krankel*.

¶ 30        The State counters no *Krankel* hearing is necessary, as defendant's motion did not clearly articulate an allegation of counsel's ineffectiveness. The State further contends defendant's motion made allegations as to Lewis's and Frizzell's representation and defendant had the benefit of representation by other attorneys, thereby making an appointment of counsel under *Krankel* unnecessary.

¶ 31        To prompt a *Krankel* inquiry, a *pro se* defendant need only bring his or her claim to the attention of the trial court. *People v. Roddis*, 2020 IL 124352, ¶ 35. When such a claim is made, the court must first examine the factual basis underlying the claim. *Id.* If the court finds

- 11 -

the claim lacks merit or pertains only to trial strategy, it need not appoint new counsel. *Id.* New counsel should be appointed, however, when the allegations show possible neglect of the case. *Id.* We review *de novo* whether a *Krankel* inquiry was properly conducted. *People v. Jolly*, 2014 IL 117142, ¶ 28.

¶ 32    All the cases cited by defendant in support of his allegation a *Krankel* hearing was triggered involve *pro se* claims of counsel's ineffectiveness made posttrial and before the direct appeal. See *Roddis*, 2020 IL 124352, ¶ 1; *People v. Moore*, 207 Ill. 2d 68, 70 (2003); *People v. Patton*, 2022 IL App (4th) 210561, ¶ 2; *In re T.R.*, 2019 IL App (4th) 190051, ¶ 25; *People v. Peacock*, 359 Ill. App. 3d 326, 329 (2005). The purpose of a *Krankel* hearing is "to facilitate the trial court's full consideration of a defendant's *pro se* claims of ineffective assistance of trial counsel and thereby potentially limit issues on appeal." *Jolly*, 2014 IL 117142, ¶ 29. Defendant has cited no case law supporting his contention a *Krankel* hearing is required when *pro se* ineffective-assistance-of-trial-counsel claims are raised over 14 years after counsel's representation ended and after the resolution of the direct appeal, the filing of a *pro se* postconviction petition, and two amended postconviction petitions. Moreover, the allegations that allegedly triggered a *Krankel* inquiry involve an attorney, Lewis, who was replaced by private counsel in February 2008, four months before trial. Defendant also had different counsel for his appeal, and different counsel was appointed on his postconviction claims; those attorneys raised ineffective-assistance-of-counsel claims on defendant's behalf.

¶ 33    The only conduct defendant mentioned in his *pro se* letter that did not pertain to Lewis's pretrial representation is Frizzell's agreement with Lewis's decision not to file, in late 2022, an affidavit regarding the alleged plea deal offered to defendant in 2007. For that claim and his claims against Lewis, defendant acquired the relief he sought—the dismissal of the

public defender and the opportunity to proceed with sentencing *pro se*.

¶ 34          In these circumstances, no *Krankel* inquiry was required.

¶ 35                    B. The Parole Review Statute Precludes Defendant's Sentence
                          From Being a *De Facto* Life Sentence

¶ 36          Defendant argues, as he was a minor when the offenses were committed, under *Graham*, 560 U.S. at 75, 82, he cannot serve an over-40-year term for nonhomicide crimes without a "meaningful opportunity" for release. Defendant maintains Illinois's parole scheme does not provide for judicial review, thereby denying him the constitutionally required "meaningful opportunity" for release. More specifically, defendant contends the Prisoner Review Board "can deny parole despite even the greatest maturity, rehabilitation, and reform," as parole in Illinois is not a right. Defendant acknowledges the Prisoner Review Board must consider rehabilitation and the diminished capacity of youthful offenders (730 ILCS 5/5-4.5-115(h) (West 2024)), but he contends the board may give such factors no weight. Particularly troubling to defendant is the fact the Prisoner Review Board must deny release if that release would deprecate the seriousness of the offense (see *id.* § 5-4.5-115(j)). Defendant, citing laws from other states, further emphasizes Illinois has one of the harshest parole statutes in the country, giving fewer opportunities for youthful offenders to seek parole than almost any other state. For example, defendant emphasizes he must wait at least 20 years before he is eligible for parole (*id.* § 5-4.5-115(b)). And, if he fails to obtain parole on his first attempt, he must wait 10 years before seeking a second and final review (*id.* § 5-4.5-115(m)). Defendant highlights "all but one of the 46 states with parole systems require or allow *unlimited* parole reviews." (Emphasis in original).

¶ 37          The State counters by relying on an Illinois Supreme Court decision filed just one week after defendant filed his opening brief: *People v. Spencer*, 2025 IL 130015. The State contends *Spencer*, which held the Illinois sentencing scheme allowed its defendant a meaningful

opportunity to obtain release before he spent 40 years in prison, is controlling and defeats defendant's claim.

¶ 38        In his reply brief, defendant distinguishes *Spencer* by emphasizing the *Spencer* defendant was 20 years old at the time of his offense and the *Spencer* holding was based on an alleged violation of Illinois's proportionate penalties clause (Ill. Const. 1970, art. I, § 11) and not on the eighth amendment (U.S. Const., amend. VIII), as alleged here. *Spencer*, 2025 IL 130015, ¶ 1. Defendant continues to maintain the Illinois parole scheme does not provide him, a nonhomicide offender, a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" (*Graham*, 560 U.S. at 75) to comply with the eighth amendment's prohibition of cruel and unusual punishment.

¶ 39        *Spencer* concerns a defendant who, at the age of 20, committed first degree murder, attempted murder, and home invasion in 2012 and was sentenced to 100 years' imprisonment. *Spencer*, 2025 IL 130015, ¶ 1. On appeal, the *Spencer* defendant asserted his sentence, as applied to him, violated the proportionate penalties clause of the Illinois Constitution because his sentence amounted to a *de facto* life sentence. *Id.* He further asserted the imposition of his sentence, without consideration of the *Miller* youth-based sentencing factors in mitigation, violated the proportionate penalties clause because, in part, Illinois's parole statutory scheme fails to provide a meaningful opportunity for parole and does not preclude his claim that his sentence is unconstitutional. *Id.* ¶ 23.

¶ 40        In addressing the defendant's claim, the *Spencer* court first summarized *Miller* and found it did not apply to the defendant, as he was an emerging adult. *Id.* ¶ 32. As the Court explained, in *Miller*, the United States Supreme Court held the eighth amendment bars a sentencing scheme that requires a juvenile offender to serve life in prison without the possibility

of parole. *Id.* ¶ 29 (quoting *Miller*, 567 U.S. at 479). The *Miller* court had done so, the *Spencer* court summarized, due to the fact juveniles differ from adults constitutionally in sentencing and, by making a juvenile offender's age and its attendant circumstances irrelevant, mandatory life-without-parole sentencing schemes pose " 'too great a risk of disproportionate punishment.' " *Id.* (quoting *Miller*, 567 U.S. at 479). The *Spencer* court concluded, while *Miller* does not prohibit life sentences for juveniles, *Miller* found the eighth amendment requires sentencing courts to have discretion to sentence juveniles to life sentences after considering their youth and its attendant characteristics. *Id.* ¶ 30. Regarding the eighth amendment's application to 20-year olds, the court further concluded "*Miller* only applies to juveniles and does not apply to emerging adults." *Id.* ¶ 32.

¶ 41       The *Spencer* court then turned to the defendant's claim under the proportionate penalties clause and found Illinois's parole review statute precluded it. See *id.* ¶ 40. The court "recognized the science that helped form the basis for the *Miller* decision may assist emerging adult defendants in supporting an as-applied, proportionate penalties clause challenge" and emerging adults often argued their challenges were *de facto* life sentences. *Id.* ¶ 34 (citing *People v. Harris*, 2018 IL 121932, ¶ 46). The court quoted, in part, the parole review statute that provides parole review for youthful offenders under the age of 21, including the statute's mandate the Prisoner Review Board panel consider " 'the diminished culpability of youthful offenders, the hallmark features of youth, and any subsequent growth and maturity of the youthful offender during incarceration.' " *Id.* ¶ 36 (quoting 730 ILCS 5/5-4.5-115(j) (West 2020)). The court concluded, because the defendant met the criteria under the statute to be eligible for parole review after serving 20 years of his sentence (730 ILCS 5/5-4.5-115(b) (West 2020)), the applicable sentencing scheme allowed him a meaningful opportunity to obtain release

before spending 40 years in prison. *Spencer*, 2025 IL 130015, ¶ 40. The court found defendant was not sentenced to a *de facto* life sentence. *Id.*

¶ 42　　　　In his reply brief, defendant urges this court not to apply *Spencer* to his eighth amendment claims. Defendant argues *Spencer* does not apply, as it involves a proportionate penalties claim by an emerging adult, not a juvenile offender. Defendant contends, under the eighth amendment, Illinois's parole sentencing scheme does not provide a meaningful opportunity for early release. We are not persuaded.

¶ 43　　　　In finding the *Spencer* defendant was not sentenced to a *de facto* life sentence because he was afforded a meaningful opportunity for release before serving 40 years in prison, the Illinois Supreme Court relied on eighth amendment case law. See *id.* ¶¶ 35, 37 (citing *People v. Dorsey*, 2021 IL 123010, ¶¶ 39, 50, 62; *People v. Buffer*, 2019 IL 122327, ¶ 40; *People v. Reyes*, 2016 IL 119271, ¶ 10). The evolution of the considerations applicable to the determination of what is, in fact, a *de facto* life sentence finds its roots in eighth amendment case law. The *Graham* court, which concluded nonhomicide juvenile offenders could not be sentenced to life without parole and must be afforded "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," is an eighth amendment case. See *Graham*, 560 U.S. at 75. *Miller* concluded the eighth amendment bars sentencing schemes that mandate life imprisonment without the possibility of parole for juvenile offenders. *Miller*, 567 U.S. at 479. In *Reyes*, 2016 IL 119271, ¶¶ 9-10, the Illinois Supreme Court extended *Miller* to find "mandatory, *de facto* life-without-parole sentence[s]," *i.e.*, sentences that are the functional equivalent of life sentences without the possibility of parole, were unconstitutional under the eighth amendment. *Buffer*, 2019 IL 122327, ¶ 40, another eighth amendment case involving a juvenile offender, defined a *de facto* life sentence under Illinois law as a prison sentence of 40

years or more. Further, in *Dorsey*, 2021 IL 123010, ¶¶ 64-65, the supreme court concluded a sentence that allowed the defendant to earn day-for-day credit provided the defendant with a meaningful opportunity for release after he served 38 years in prison, which was less than a *de facto* life sentence, and did not violate the eighth amendment. *Spencer*'s holding is grounded in the eighth amendment. Defendant has provided no convincing reason not to apply it to his eighth amendment claim.

¶ 44       We find *Spencer*'s holding defeats defendant's claim his 76-year sentence violates the eighth amendment and *Miller*. As in *Spencer*, defendant, who was sentenced in 2024, is eligible for parole after serving 20 years. See 730 ILCS 5/5-4.5-115(b) (West 2024).

¶ 45       As to defendant's challenges to the specific provisions of the parole scheme, such as the limit on the number of parole petitions that may be applied, *Spencer* does not explicitly address those challenges. However, similar challenges were asserted and rejected in the Second District in *People v. Cavazos*, 2023 IL App (2d) 220066, ¶¶ 50-60. *Spencer* cites *Cavazos* as one of four cases that have held Illinois's parole statute provides a meaningful opportunity for release before a *de facto* life sentence would be served. *Spencer*, 2025 IL 130015, ¶ 39 (citing *Cavazos*, 2023 IL App (2d) 220066, ¶ 60). As the *Spencer* court was aware of *Cavazos* when it rejected the argument the Illinois parole statute did not provide the *Spencer* defendant a meaningful opportunity for parole, we will not revisit those same arguments as a challenge to *Spencer*'s holding.

¶ 46       C. Defendant's Sentence to the Minimum Term Statutorily Allowed
Precludes His Argument the Trial Court Considered
Improper Sentencing Factors

¶ 47       Defendant argues the trial court applied improper sentencing factors in imposing his 76-year sentence. Defendant contends the court misapplied *Miller*'s impulsivity factor (see

730 ILCS 5/5-4-5-105(a)(1) (West 2024)), asserting impulsivity is not "split-second conduct." He argues "impulsivity" is an inability to exercise self-control, consider alternative courses of action, and consider consequences and his conduct, which consisted of a spate of burglaries and sexual assaults in a one-night crime spree spanning approximately two blocks, falls within this definition. Defendant further contends the court erred in stating deterrence is always a factor in sentencing instead of applying discretion in applying the factor to his specific circumstances. Defendant last argues, in considering improper factors, the court "conflated insanity and *Graham* law." Pointing to the court's statement defendant's age did not prevent him from knowing the criminality of his acts, defendant urges " 'knowing the criminality' " is not a *Miller* or *Graham* factor but part of the insanity test.

¶ 48        The State counters by emphasizing defendant's minimum sentence precludes any relief for any alleged consideration of improper sentencing factors or a reduction in his sentence. In support, the State points to *People v. Scott*, 2015 IL App (4th) 130222, ¶¶ 53-54, and *People v. Bourke*, 96 Ill. 2d 327, 332 (1983).

¶ 49        In *Scott*, this court relied on *Bourke* and found remand for a sentencing court's consideration of an improper sentence factor is not automatically warranted. *Scott*, 2015 IL App (4th) 130222, ¶ 53 (citing *Bourke*, 96 Ill. 2d at 332). According to our supreme court in *Bourke*, when it can be determined from the record "the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remandment is not required." *Bourke*, 96 Ill. 2d at 332. It follows, if the minimum statutorily required sentence is imposed, the sentence was not affected by an improperly considered aggravating factor.

¶ 50        The record shows defendant was sentenced to the minimum sentence mandated by statute. Each of the aggravated criminal sexual assault convictions were for Class X felonies,

with determinate sentences of 6 to 30 years. 730 ILCS 5/5-4.5-25 (West 2024). Counts I, II, VII, and IX alleged violations of section 12-14(a)(1) of the Criminal Code (720 ILCS 5/12-14(a)(1) (West 2006)). For those counts, subsection (d)(1) mandates an additional 10 years be applied to the sentence due to defendant's use of a knife during the commission of aggravated criminal sexual assault (*id.* § 12-14(d)(1)). Counts III and VIII allege aggravated criminal sexual assault but contain no mention of the use of a knife (*id.* § 12-14(a)(2)). For those counts, defendant was sentenced to the minimum of six years. Under section 5-8-4(d)(2) of the Unified Code(730 ILCS 5/5-8-4(d)(2) (West 2024)), the aggravated criminal sexual assault counts must be served consecutively. The residential burglary convictions, Class 1 felonies, have a sentencing range of 4 to 15 years in prison (*id.* § 5-4.5-30), which the trial court ordered served concurrently with the sentences for aggravated criminal sexual assault (*id.* § 5-8-4(a)(i)). The mandatory minimum defendant could be sentenced is 76 years, which is the sentence he received.

¶ 51 We note the record shows the trial court believed it had discretion on whether to impose the 10-year enhancement on the aggravated criminal sexual assault charges:

> "[T]he Court understands that the Illinois legislature, since the last sentencing, has taken certain steps to address juvenile sentencing and what the Court should consider. 730 ILCS 5/5-4.5-105 codifies the *Miller* factors. It became effective last month, the beginning of July of this year. The Court has the discretion under this statute to decide to decline whether to impose any sentencing enhancements based upon that statute, the new statute that was just enacted."

When pronouncing the sentence, the court expressly decided to impose the sentencing enhancement.

¶ 52    There is, however, no language in section 5-4.5-105 that grants a sentencing court discretion regarding whether to impose the additional 10 years in section 12-14(d)(1) of the Criminal Code (720 ILCS 5/12-14(d)(1) (West 2006)) for violations of section 12-14(a)(1) (*id.* § 12-14(a)(1)). Nor does section 5-4.5-105 give discretion to sentencing courts to apply enhancements mandated under the differently numbered section for aggravated criminal sexual assault in the Criminal Code (720 ILCS 5/11-1.30(a)(1), (d)(1) (West 2024)). Section 5-4.5-105 allows the court, when sentencing an offender under the age of 18, discretion in applying *firearm* enhancements: "the court *** may, in its discretion, decline to impose any otherwise applicable sentencing enhancement based upon firearm possession, possession with personal discharge, or possession with personal discharge that proximately causes great bodily harm, permanent disability, permanent disfigurement, or death to another person." 730 ILCS 5/5-4.5-105(e) (West 2024). It also allows sentencing courts to "depart from any *** sentencing enhancement" when "the individual against whom the person is convicted of committing the offense previously committed a crime under [sections involving offenses such as trafficking and aggravated criminal sexual assault] against the person within 3 years before the offense in which the person was convicted." *Id.* § 5-4.5-105(c)(2). Defendant did not use a firearm in the offenses, and defendant was not a victim of an offense by A.W.

¶ 53    In his reply brief, defendant does not dispute the State's contention his sentence was the statutory minimum he could receive, nor does defendant argue the trial court had discretion to impose the enhancements. Defendant's sole response to the State's contention his sentence to the statutory minimum precludes his claim is to state *Graham* governs his sentencing and under *Graham*, a sentencing court has discretion to go below the statutory minimum when sentencing a juvenile offender. To support this contention, defendant cites *Jones v. Mississippi*,

593 U.S. 98, 111-12 (2021), *Miller*, 567 U.S. at 466-67, and *Reyes*, 2016 IL 119271, ¶¶ 7-10.

¶ 54    However, neither *Graham*, *Jones*, *Miller*, nor *Reyes* supports defendant's contention a sentencing court may ignore statutory minimums when sentencing juveniles. At best, these cases establish statutory minimums may be ignored when the sentences imposed on juveniles violate the eighth amendment. Here, we have found defendant's sentence complies with *Miller* and the eighth amendment. The sentencing court thus had no authority to sentence defendant below the minimum set by our legislature. See generally, *People ex rel. Smith v. Tobin*, 2025 IL 131213, ¶¶ 13, 27 (finding the imposed jail sentence below the statutory minimum and issuing a writ of *mandamus* directing a new sentence in compliance with the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2024)).

¶ 55    Because defendant's sentence is the minimum mandated by law, defendant cannot prove his sentence was affected by improper sentencing factors. Remand is unnecessary.

¶ 56        D. Defendant's Sentence to the Minimum Term Statutorily Allowed
                Precludes His Argument His Sentence is Excessive

¶ 57    Defendant further challenges his sentence by arguing it is excessive. Given the existence of mitigating factors such as his horrific childhood (730 ILCS 5/5-4.5-105(a)(3) (West 2024)), his credible statement in allocution (*id.* § 5-4.5-105(a)(12)), and his efforts at rehabilitation, demonstrating rehabilitative potential (*id.* § 5-4.5-105(a)(4)), defendant maintains he should be resentenced. Alternatively, he requests the reduction of his sentence to 40 years.

¶ 58    As to defendant's excessiveness claim, the State asserts two arguments. First, the State maintains defendant forfeited the argument by not raising it in his motion to reconsider his sentence. Second, the State maintains we should deny plain-error review, as defendant received the minimum sentence required by law and, therefore, a reduction in the allegedly excessive sentence is not possible.

¶ 59 "[T]o warrant plain-error review, an error at sentencing must be 'sufficiently grave that it deprived the defendant of a fair sentencing hearing.' " *Scott*, 2015 IL App (4th) 130222, ¶ 52. Here, any alleged error was not grave, as it had no effect on defendant's sentence. The law required defendant be sentenced to a minimum of 76 years in prison. He was not sentenced to one day greater than that. Defendant cannot obtain any relief on his excessive-sentence claim.

¶ 60                                III. CONCLUSION

¶ 61        We affirm the trial court's judgment.

¶ 62        Affirmed.