2026 IL App (1st) 232277-U

FOURTH DIVISION
Order filed: May 28, 2026

No. 1-23-2277

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No.  02 CR 1944 |
| | ) | |
| LATONYA STARNES, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE QUISH* delivered the judgment of the court.
Justices Lyle and Ocasio concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The circuit court's order granting the State's motion to dismiss defendant's postconviction petition is affirmed. Defendant failed to make a substantial showing that her 50-year sentence for first degree murder violated the proportionate penalties clause or that trial counsel was ineffective for failing to produce mitigation evidence at sentencing. Postconviction counsel did not provide unreasonable assistance by failing to attach additional evidence to support defendant's ineffective assistance claim.

_____

* Justice Quish was assigned to replace the late Justice Thomas Hoffman following his passing. Justice Quish has reviewed the appellate briefs and the record in this case.

¶ 2       Following a jury trial, the defendant, Latonya Starnes, was convicted of first degree murder and sentenced to 50 years in the Illinois Department of Corrections. This court affirmed defendant's conviction and sentence on direct appeal. *People v. Starnes*, 374 Ill. App. 3d 132 (2007). Defendant now appeals from the second-stage dismissal of her initial postconviction petition, arguing that (1) her 50-year sentence violates the proportionate penalties clause; (2) trial counsel was ineffective by failing to investigate and present mitigating evidence at her sentencing hearing; and (3) postconviction counsel provided unreasonable assistance by failing to provide support for her ineffective assistance of counsel claim. On June 5, 2025, this court affirmed the judgment of the circuit court, finding that defendant's sentencing claim was barred by *res judicata*. *People v. Starnes*, 2025 IL App (1st) 232277-U. On October 29, 2025, the Illinois Supreme Court denied defendant's petition for leave to appeal, but issued a supervisory order directing this court to vacate our June 5, 2025 judgment and to reconsider our finding that defendant's sentencing claim was barred by *res judicata* in light of the supreme court's opinion in *People v. Spencer*, 2025 IL 130015, and determine if a different outcome is warranted. See *People v. Starnes*, No. 131972 (October 29, 2025) (supervisory order). For the following reasons, we affirm.

¶ 3       The evidence at trial was previously set forth in our order on defendant's direct appeal. *Starnes*, 374 Ill. App. 3d at 133-35. That evidence established that, shortly after 8:30 p.m. on December 29, 2001, paramedics were called to 5800 South Wolcott Avenue in Chicago to treat 11-month-old Bryant Starnes. When they arrived, Bryant was unconscious and not breathing. Efforts to revive Bryant were unsuccessful, and he was pronounced dead later that night. The following day, Dr. Kendall Crowns of the Cook County medical examiner's office performed an autopsy on Bryant and determined that he had died from blunt trauma to the abdomen, causing

laceration of the liver and hemoperiteneum, or blood in the abdominal cavity. Dr. Crowns determined the cause of death to be homicide.

¶ 4    On the morning of January 1, 2002, Chicago police spoke to defendant at Area One police headquarters regarding Bryant's death. In a videotaped statement, defendant stated that during the evening of December 29, 2001, she was alone with Bryant in her boyfriend Antwon McBride's bedroom. McBride had left the house earlier to go to a party, and defendant was depressed and frustrated that she had to watch the baby. She thought about taking her own life, but then thought it would be better to end Bryant's life. She then straddled the baby, put her hands on his right abdomen, and pushed down three times, increasing the pressure each time until, by the third time, she was pushing with all her body weight. The baby began moaning and, after a few minutes, his lips began changing color. Afterwards, defendant called family members to tell them that something was wrong with Bryant, and an ambulance was called.

¶ 5    The jury found defendant guilty of eight counts of first degree murder and made a separate finding that the murder was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty and that the victim was under 12 years of age."

¶ 6    The matter proceeded to sentencing. In mitigation, defendant's attorney proffered that defendant dropped out of high school in 11th grade when she got pregnant at the age of 17. Counsel stated that defendant was 18 years old at the time of Bryant's death and 21 years old at the time of sentencing. Defense counsel observed that defendant's mother was present at every court date. Counsel stated that defendant "had [a] problem following rules in her house" which is "what teenagers do." Counsel asserted that defendant was "scared" when being questioned by detectives and was concerned about whether her baby would have a funeral. Counsel asked for a minimum

sentence. In her statement in allocution, defendant requested "a week's stay" so her family could visit her after sentencing, and asked whether she would get "day for day" sentencing credit.

¶ 7    In announcing its sentencing decision, the trial court stated that it considered the relevant statutory factors, and found that the murder was a premeditated act done for selfish reasons, defendant's testimony and statement in allocution showed a lack of remorse, and she lacked understanding of the severity of what she faced. The court observed that, based on the jury's findings, it could impose an extended term sentence of 60 to 100 years' incarceration, but concluded that such a sentence was not warranted in this case. The court stated that it believed it was necessary to sentence defendant "close to an extended term sentence," and sentenced her to 50 years in the Illinois Department of Corrections.

¶ 8    On direct appeal, this court affirmed. *Starnes*, 374 Ill. App. 3d at 145. Relevant to this appeal, defendant argued that "the trial court abused its discretion in sentencing her to 50 years in prison for the first-degree murder of her infant son because the sentence gave inadequate consideration to defendant's youth, lack of criminal history, background, and potential for rehabilitation." *Id.* at 142. This court rejected defendant's argument, finding that "[t]he trial court was informed of the defendant's youth, her difficult background, her lack of criminal history, and her potential for rehabilitation," and concluding that the trial court did not abuse its discretion in imposing a 50-year sentence. *Id.* at 143-44.

¶ 9    On July 11, 2019, defendant filed a *pro se* postconviction petition in the circuit court. Among other claims that were later abandoned, the petition alleged that her sentence violated the Illinois Constitution and the Eighth Amendment of the United States Constitution under *Miller v.*

*Alabama*, 567 U.S. 460 (2012). The circuit court docketed the petition and appointed counsel to represent defendant.

¶ 10    Postconviction counsel filed a Rule 651(c) certificate and a supplement to defendant's postconviction petition. The supplement adopted the claims in the *pro se* petition and developed defendant's claim that she was entitled to resentencing under the Eighth Amendment and the proportionate penalties clause of the Illinois Constitution. The supplement alleged that defendant experienced an "appalling" childhood consisting of "abuse, cruelty, and violence inflicted by her mother and family," and that this mitigating evidence was not presented to the trial court.

¶ 11    Attached to the supplement were two academic papers regarding the brain development of young adults and the application of *Miller*, defendant's presentence investigation report ("PSI"), and certificates defendant earned while incarcerated. The supplement also included an evaluation by Dr. Lauren K. Robinson, which documented defendant's reports of sexual and physical abuse as a child, and diagnosed her with major depressive disorder and generalized anxiety disorder. The supplement also contained affidavits from defendant and her two sisters, which documented physical and emotional abuse defendant experienced at the hands of her mother, and sexual abuse perpetrated by defendant's uncles.

¶ 12    The State filed a motion to dismiss defendant's postconviction petition, arguing that defendant's sentencing claim was barred by *res judicata* as it was raised and rejected on direct appeal, and defendant's other claims were meritless.

¶ 13    Defendant filed an amended postconviction petition on the same day as the State's motion to dismiss. The amended petition abandoned defendant's *pro se* claims except for the sentencing claim, and added new claims that (1) trial counsel was ineffective for failing to present mitigating

evidence at defendant's sentencing hearing, and (2) appellate counsel was ineffective for failing to raise a proportionate penalties clause challenge to her sentence on direct appeal. Defendant filed a response to the State's motion to dismiss, which added an additional claim that appellate counsel was ineffective for failing to allege the ineffective assistance of trial counsel based on the failure to present relevant mitigation evidence at defendant's sentencing hearing.

¶ 14    The State filed an addendum to its motion to dismiss, addressing the additional claims raised in the amended petition and defendant's response. The State continued to assert that defendant's sentencing claim was barred by *res judicata*, and argued that trial counsel was not ineffective when defendant received a 50-year sentence when she faced a possible extended term sentence.

¶ 15    After hearing arguments, the circuit court dismissed defendant's postconviction petition. The circuit court concluded that defendant's proportionate penalties clause claim was barred by *res judicata* because she contested the imposition of the 50-year sentence on direct appeal. The court also found that, even if not barred, the claim was meritless, as a 50-year sentence did not shock the conscience of the community based on the facts of the case and the fact that defendant faced a possible extended term sentence based on the jury's findings. The court found that *Miller* had not been extended to young adult offenders such as defendant, and therefore, any claim based on *Miller* was meritless. The court held that trial counsel was not ineffective at sentencing when defendant received a sentence below the extended term sentence for which she was eligible based on the jury's findings. The court concluded that appellate counsel was not ineffective, as it raised a challenge to defendant's sentence on direct appeal based on defendant's youth and potential for rehabilitation. This appeal follows.

¶ 16    On appeal, defendant argues that the circuit court erred by dismissing her postconviction petition because she made a substantial showing that (1) her 50-year sentence violates the proportionate penalties clause of the Illinois Constitution and (2) trial counsel was ineffective for failing to investigate and present mitigation evidence at her sentencing hearing. In the alternative, defendant argues that postconviction counsel provided unreasonable assistance by failing to include evidence regarding the extent to which trial counsel was aware of the mitigating evidence prior to defendant's sentencing hearing or explain why such evidence was not included and argues that this court should remand for further second-stage proceedings with new counsel.

¶ 17    The Post-Conviction Hearing Act ("Act") allows a defendant to collaterally attack a conviction by asserting that it resulted from a "substantial denial" of their constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2024). A postconviction petition is not an appeal from the conviction judgment, but rather, is a collateral attack on the trial court proceedings. *People v. Tate*, 2012 IL 112214, ¶ 8. If the petition is not summarily dismissed, it must be docketed for further consideration at the second stage, and the circuit court may appoint counsel for the defendant. 725 ILCS 5/122-2.1(b); 725 ILCS 5/ 122-4 (West 2024). At the second stage, the defendant must make a substantial showing of a deprivation of a constitutional right. *People v. Bailey*, 2017 IL 121450, ¶ 18. If the defendant fails to make such a showing, the petition is dismissed. *Id.* We review the second-stage dismissal of a postconviction petition *de novo. People v. Cotto*, 2016 IL 119006, ¶ 24.

¶ 18    First, defendant argues that her 50-year sentence violates the proportionate penalties clause. The State responds that defendant's sentencing claim is barred by *res judicata* because this court resolved a challenge to defendant's sentence on direct appeal. A postconviction proceeding is

intended to allow inquiry into constitutional issues in the defendant's conviction that could not have been raised on direct appeal. *People v. Towns*, 182 Ill. 2d 491, 502 (1998). "Accordingly, issues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*; issues that could have been raised, but were not, are considered forfeited." *People v. Davis*, 2014 IL 115595, ¶ 13.

¶ 19 On direct appeal, defendant argued that "the trial court abused its discretion in sentencing her to 50 years in prison for the first-degree murder of her infant son because the sentence gave inadequate consideration to defendant's youth, lack of criminal history, background, and potential for rehabilitation." *Starnes*, 374 Ill. App. 3d at 145. In her postconviction petition, defendant raised an as-applied proportionate penalties clause claim based on evidence that her brain was akin to that of a juvenile and additional mitigating evidence that was not presented to the trial court.

¶ 20 In *Spencer*, the defendant, who was 20 years old at the time of the offense, raised an as-applied proportionate penalties clause challenge to his 100-year sentence on direct appeal. *Spencer*, 2025 IL 130015, ¶ 23. The court held that defendant's claim did not fall under the scope of *Miller v. Alabama*, 567 U.S. 460 (2012), because defendant was 20 years old at the time of the offense and the opportunity for early parole meant that he did not receive a *de facto* life sentence. *Id.* ¶¶ 28-40. However, the court noted that the defendant was not foreclosed from bringing an as-applied challenge pursuant to the proportionate penalties clause. *Id.* ¶ 42. The court observed that as-applied constitutional challenges were heavily fact-dependent and required a developed record to succeed. *Id.* ¶ 44. Accordingly, it held that "[b]ased on this general principle that as-applied constitutional claims cannot ultimately succeed absent a sufficiently developed evidentiary record,

we find that the proper venue for Spencer's as-applied challenge is in a postconviction proceeding." *Id.* ¶ 45.

¶ 21    While *Spencer* involved a proportionate penalties clause claim that was raised on direct appeal, its reasoning suggests that such a claim is best raised in a postconviction proceeding based on a developed record. Further, it acknowledges that a defendant who raises a challenge to their sentence on direct appeal may raise a proportionate penalties clause claim in a postconviction proceeding without a *res judicata* bar. In this case, defendant's postconviction petition relied heavily on information that was not part of the record on direct appeal, including the affidavits from defendant's sisters and the evaluation from Dr. Robinson. While defendant raised a challenge to her sentence on direct appeal, she did not include this information and did not directly invoke the proportionate penalties clause, instead arguing that the circuit court abused its discretion. Under these circumstances, we find that defendant's proportionate penalties clause claim is not barred by *res judicata*.

¶ 22    The proportionate penalties clause states that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. This clause provides broader protection than the Eighth Amendment of the United States Constitution. *People v. Clemons*, 2012 IL 107821, ¶ 40. A sentence violates the proportionate penalties clause "if the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Leon Miller*, 202 Ill. 2d 328, 338 (2002). Evaluating a proportionate penalties clause challenge requires reviewing "the gravity of the defendant's offense in connection

with the severity of the statutorily mandated sentence within our community's evolving standard of decency." *Id.* at 340.

¶ 23    Defendant argues that she made a substantial showing that her 50-year sentence violates the proportionate penalties clause because her petition contains evidence that her brain was akin to that of a juvenile at the time she committed the underlying offense, and therefore, she should have been treated as a juvenile at her sentencing hearing. Defendant relies on a line of cases following *Miller*, where the United States Supreme Court held that sentencing schemes which mandated life sentences without parole for juvenile offenders without allowing for consideration of their youth violated the Eighth Amendment of the United States Constitution. *Miller*, 567 U.S. at 479. Illinois courts have extended the logic of *Miller* to *de facto* life sentences, when a juvenile defendant receives a mandatory sentence that does not allow for a meaningful opportunity for release within 40 years. *People v. Dorsey*, 2021 IL 123010, ¶ 65; *People v. Buffer*, 2019 IL 122327, ¶ 40.

¶ 24    Our supreme court has declined to apply the logic of *Miller* directly to young adults, but "has not foreclosed 'emerging adult' defendants between 18 and 19 years old from raising as-applied proportionate penalties clause challenges to life sentences based on the evolving science on juvenile maturity and brain development." *People v. Clark*, 2023 IL 127273, ¶ 87; see *Spencer*, 2025 IL 130015, ¶ 34; *People v. House*, 2021 IL 125124, ¶ 31; *People v. Harris*, 2018 IL 121932, ¶ 41; *People v. Thompson*, 2015 IL 118151, ¶ 44. This allows for "the possibility of a defendant raising a *Miller*-based challenge with respect to *mandatory* life sentences in *initial* postconviction petitions" under the proportionate penalties clause. *Clark*, 2023 IL 127273, ¶ 88 (emphasis in original). While young adults do not benefit directly from *Miller*, our supreme court has

"recognized the science that helped form the basis for the *Miller* decision may assist emerging adult defendants in supporting an as-applied, proportionate penalties clause challenge." *Spencer*, 2025 IL 130015, ¶ 34 (citing *Harris*, 2018 IL 121932, ¶ 46).

¶ 25    "[T]o establish an as-applied constitutional challenge to his or her life sentence based on *Miller* principles, a young adult offender is required to allege and ultimately demonstrate that (1) at the time of the commission of the underlying offense, his or her own specific characteristics—those related to youth, level of maturity, and brain development—placed him or her in the same category of the juvenile offenders described in *Miller* and (2) his or her sentencing was not *Miller* compliant, in that a life sentence was imposed without regard for the offender's youth and its attendant characteristics." *People v. Cortez*, 2021 IL App (4th) 190158, ¶ 47. However, such an argument is not available when a defendant receives a discretionary sentence. See *People v. Hilliard*, 2023 IL 128186, ¶ 27 ("Thus, as defendant did not receive a mandatory life sentence, *Thompson*, *Harris*, and *House* do not provide support for his proportionate penalties claim, beyond the general principle that as-applied constitutional claims cannot ultimately succeed absent a sufficiently developed evidentiary record."). "[U]nless a sentencing court 'expressly refuses as a matter of law to consider the defendant's youth ***', a discretionary sentencing scheme, in itself, satisfies *Miller*'s requirement that sentencing courts account for youth and its attendant circumstances." *People v. Wilson*, 2023 IL 127666, ¶ 38 (quoting *Jones v. Mississippi*, 593 U.S. 98, 115 n.7 (2021)).

¶ 26    Defendant's 50-year sentence was discretionary, as she faced a possible sentence of between 20 and 100 years' incarceration based on the jury's findings. 730 ILCS 5/5-4.5-20(a)(1)-(2) (West 2004). Since defendant did not receive a mandatory life or *de facto* life sentence, the

principles set forth in *Miller* do not support her as-applied proportionate penalties clause claim. *Hilliard*, 2023 IL 128186, ¶¶ 27-28; *Clark*, 2023 IL 127273, ¶¶ 87-88. However, she may still challenge her sentence as "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community" under the proportionate penalties clause. *Hilliard*, 2023 IL 128186, ¶ 29; *Leon Miller*, 202 Ill. 2d at 338.

¶ 27 Defendant argues that her sentence is disproportionate to the offense as her postconviction petition has provided mitigating evidence that was not available to the sentencing court regarding abuse she experienced during childhood, and argues that the sentencing court was incorrectly advised in the PSI that defendant's childhood was "good." Defendant's PSI, which was reviewed by the trial court prior to sentencing, noted that defendant suffered from depression for which she was prescribed Zoloft and that she had been admitted to Hartgrove Hospital for two weeks when she was 16 years old. The PSI also stated that her relationship with her mother was good. The evidence attached to defendant's postconviction petition suggested the opposite, as it stated that defendant suffered from physical abuse by her mother and sexual abuse by her uncles. Defendant's petition also contains an evaluation from Dr. Robinson diagnosing defendant with major depressive disorder and generalized anxiety disorder and academic papers discussing the brain development of young adults as it relates to the principles set forth in *Miller*.

¶ 28 Even considering the additional mitigating evidence provided in defendant's petition, we do not find that defendant's sentence is disproportionate to the offense. "The seriousness of the crime is the most important factor in determining an appropriate sentence." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). As this court observed on direct appeal:

> "The trial court was informed of the defendant's youth, her difficult background, her lack of a criminal history, and her potential for rehabilitation. Defendant

> murdered her own defenseless, infant son by pressing on his abdomen with such force that his liver was lacerated nearly in half. She then watched for several minutes as the baby moaned and lost consciousness. She did this, as reflected in her videotaped statement, because she wanted to attend a party with her boyfriend and felt the baby was holding her back. When she addressed the court during sentencing she expressed no remorse, but only articulated concern regarding what sentencing credits she would receive."

*Starnes*, 374 Ill. App. 3d at 144. Defendant faced a possible sentence of 20 to 100 years in prison for the first degree murder of Bryant. She received a 50-year sentence, near the high end of the range for first degree murder, but short of an extended term sentence of up to 100 years for which she was eligible based on the jury's findings that the murder was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty and that the victim was under 12 years of age." Given the facts of the offense, we do not find that defendant's 50-year sentence is "cruel, degrading, or so wholly disproportionate to the offense" that it violates the proportionate penalties clause. *Leon Miller*, 202 Ill. 2d at 338; see *People v. Green*, 2020 IL App (5th) 170462, ¶¶ 37-43 (discretionary 60-year sentence for 22-year-old defendant convicted of first degree murder of two-year-old child did not violate proportionate penalties clause). We find that defendant's postconviction petition failed to make a substantial showing that her 50-year sentence violated the proportionate penalties clause.

¶ 29 Defendant next argues that we should remand for an evidentiary hearing on her claim that her trial counsel was ineffective for failing to investigate and present mitigating evidence at her sentencing hearing. The State responds that defendant failed to make a substantial showing that trial counsel was ineffective. We agree with the State.

¶ 30 Both the United States and Illinois Constitutions guarantee the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Hale*, 2013 IL

113140, ¶ 15. To prevail on a claim alleging ineffective assistance of counsel, the defendant must show that (1) counsel's representation was deficient such that it fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant such that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceedings would have been different. *People v. Domagala*, 2012 IL 113688, ¶ 11. To establish prejudice with regards to counsel's performance at a sentencing hearing, the defendant must show that there is a reasonable probability that the defendant's sentence was impacted by counsel's deficient performance. *People v. Steidl*, 177 Ill. 2d 239, 257 (1997).

¶ 31    At defendant's sentencing hearing, trial counsel offered information about defendant's youth, immaturity, and her early pregnancy as mitigation. Defendant asserts that there was a reasonable probability that she would have received a shorter sentence if trial counsel offered additional evidence of her "horrific" upbringing, as explained in the attachments to her petition. However, the record contains no information regarding whether or to what extent trial counsel was aware of defendant's upbringing at the time of sentencing. The PSI contained no information regarding defendant's history of abuse, and there is no other information in the record to suggest that trial counsel would have been aware of this evidence. Neither defendant's nor her sisters' affidavits state that they told defendant's attorney any of this information. We cannot find that trial counsel was ineffective for failing to investigate and present mitigation evidence of which she was never made aware. See *People v. Morgan*, 2015 IL App (1st) 131938, ¶ 77 (finding that trial counsel was not ineffective for failing to investigate potential mitigation witnesses when there was no evidence that the defendant told counsel about the witnesses). Therefore, we find that defendant

has failed to make a substantial showing that trial counsel was ineffective for failing to present mitigation evidence at sentencing.

¶ 32    Defendant acknowledges this evidentiary shortcoming and asserts, in the alternative, that postconviction counsel provided unreasonable assistance by not including any information or reasoning as to why defendant and trial counsel did not discuss defendant's history of abuse prior to sentencing. In a postconviction proceeding, there is no constitutional right to counsel. Rather, the right to counsel is a matter of "legislative grace." *People v. Custer*, 2019 IL 123339, ¶ 30; *People v. Porter*, 122 Ill. 2d 64, 73 (1988). A postconviction defendant is entitled only to the level of assistance granted by the Act, which is labelled a "reasonable" level of assistance. *People v. Flores*, 153 Ill. 2d 264, 276 (1992). Rule 651(c) sets forth the requirements for postconviction counsel, including that counsel "has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of the petitioner's contentions." Ill. Sup. Ct. R. 651(c) (eff. Jul. 1, 2017). Once postconviction counsel files a valid Rule 651(c) certificate, a rebuttable presumption of reasonable assistance arises. *Custer*, 2019 IL 123339, ¶ 32.

¶ 33    Here, postconviction counsel filed a valid Rule 651(c) certificate, giving rise to a presumption of reasonable assistance. Defendant asserts that postconviction counsel provided unreasonable assistance by failing to produce evidence regarding whether trial counsel was aware of defendant's experience with abuse as a child or by failing to explain the lack of such evidence. However, it is speculative whether such evidence exists, and postconviction counsel's failure to procure evidence outside the record does not constitute unreasonable assistance. See *People v. James*, 2023 IL App (1st) 192232, ¶ 38 ("If the defendant claims that evidence missing from his petition exists outside the record, postconviction counsel has no duty to find that evidence."). The

record shows that postconviction counsel made multiple amendments to defendant's *pro se* claims, secured affidavits from defendant and her sisters, and secured a report from Dr. Robinson detailing defendant's history of abuse and mental health problems. Defendant has failed to rebut the presumption that postconviction counsel provided reasonable assistance.

¶ 34    For the reasons stated above, we affirm the order of the circuit court granting the State's motion to dismiss defendant's postconviction petition.

¶ 35    Affirmed.